UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY ROBERTS,<br><br>                            Plaintiff,<br>v.<br><br>S. HENSLEY, et al.,<br><br>                           Defendants. | Case No.:  15cv1871-LAB (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO SERVE SUPPLEMENTAL INTERROGATORIES**<br><br>**[ECF No. 46]** |

Currently before the Court are Plaintiff's "Motion for Leave to Serve Supplemental Interrogatories" [ECF No. 46 ("Mot.")], Defendants' opposition [ECF No. 49 ("Oppo.")], and Plaintiff's reply [ECF No. 51 ("Reply")].  Having considered all of the briefing and supporting documents, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for leave to serve supplemental interrogatories.

## DISCUSSION

Plaintiff asks the Court for leave to serve supplemental interrogatories pursuant to Rule 33(a) of the Federal Rules of Civil Procedure.  See Mot.  In support, Plaintiff explains that on September 6, 2016, he served written interrogatories and requests for production ("RFPs") on Defendants, including Defendants Hipp, Hensley, Nguyen, and Sabati, and claims that those Defendants' responses were incomplete and evasive.  Id. at 4.  Plaintiff contends that he

1  "requires additional written interrogatories to adequately prepare for and proceed to trial," and
2  that he will be severely prejudiced if his motion is denied. See id. Plaintiff asserts that the
3  supplemental interrogatories will "focus on specific relevant facts" and identifies the
4  interrogatories as directed to the defendant's "personal involvement," "facts that substantiate
5  the degree or nature of [defendant's] involvement," and whether defendants "purposefully
6  ignored their own expressed orders to provide plaintiff dental treatment for reasons unrelated
7  to his dental needs." Id. at 5-6. Plaintiff seeks to serve thirteen supplemental interrogatories
8  on Defendant Hipp [Mot., Exh. 1], thirteen supplemental interrogatories on Defendant Hensley
9  [id., Exh. 3], nineteen supplemental interrogatories on Defendant Nguyen [id., Exh. 4], and
10 fourteen supplemental interrogatories on Defendant Sabati [id., Exh. 2]. The proposed
11 interrogatories are not identical and appear to be tailored to each Defendant. See id.

12      Defendants claim that Plaintiff already has propounded voluminous discovery consisting
13 of 149 interrogatories and three sets of requests for production ("RFPs"), that they have
14 responded to the first two sets of RFPs, and that they are in the process of responding to the
15 third set. Oppo. at 2. Defendants further maintain that they produced all of Plaintiff's dental
16 records, prison policies and procedures related to dental care, information about their
17 "involvement in Plaintiff's dental care," and names of office technicians who "might have been
18 responsible for scheduling follow up appointments during the times at issue." Id. at 2-3, 6.
19 Defendants thus contend that Plaintiff's requests for additional discovery are unnecessary and
20 harassing, and ask the Court to deny Plaintiff's motion. Id. at 6-7.

21      Although Defendants attached Plaintiff's initial interrogatories to their opposition,
22 Defendants did not provide their complete interrogatory responses. See Oppo. In his reply,

Plaintiff provided interrogatory responses from Defendants Malek, Hipp, Sabati, Hensley, and Nguyen. See Reply, Exhs. 3-4, 7-9. The Court has reviewed the parties' submissions and notes that Plaintiff served twenty-five interrogatories on Defendant Hipp [Oppo., Exh. 1 at 17-23], twenty-five interrogatories on Defendant Hensley [id. at 31-38], twenty-four interrogatories on Defendant Nguyen [id. at 2-9], eighteen interrogatories on Defendant Sabati [id. at 10-16], twenty-five interrogatories on Defendant Malek [id. at 24-30], ten interrogatories on Defendant Behrens [id. at 39-43], and twenty-two interrogatories on Defendant Mendoza [id. at 44-51], 149 interrogatories in total. See id.; see also Oppo. at 2 (containing Defendants' representation that Plaintiff served 149 interrogatories). Defendants Hipp, Hensley, Nguyen, Sabati, and Malek provided substantive responses to the vast majority of Plaintiff's original interrogatories but objected to some on the grounds that they sought expert opinions beyond the Defendant's expertise or knowledge and some on the ground that the request sought irrelevant information. See Reply, Exhs. 3-4, 7-9. It is unclear from the parties' submissions whether Plaintiff was provided with interrogatory responses from Defendants Behrens and Mendoza but the Court was not. See Oppo., Exh. 1; Reply.

Fed. R. Civ. P. 33(a) provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." A party "seeking leave to . . . serve more Interrogatories than are contemplated by the Federal Rules . . . must make a particularized showing of [why] the discovery is necessary." Ioane v. Spjute, 2015 WL 1984835, at *1 (E.D. Cal. Apr. 30, 2015) (citing Castaneda v. Burger King Corp., 2009 WL 4282596, at *1 (N.D. Cal. Nov. 25, 2009) and

1  Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minnesota, 187 F.R.D. 578, 586 (D. Minn. 1999)); Jacobs v. Scribner, 2008 WL 2773999, at *1 (E.D. Cal. June 27, 2008) ("a bare assertion of need is usually insufficient").

Here, Plaintiff has articulated that he needs to serve additional interrogatories because he lacks legal knowledge, is incarcerated, has "limit[ed] [] ability to pursue all means of discovery," and needs to ask follow-up questions because Defendants have not adequately responded to the initial interrogatories. Mot. at 4-5. The Court finds that this explanation is sufficient to justify additional interrogatories. See McNeil v. Hayes, 2014 WL 1125014, at *2-3 (E.D. Cal. Mar. 20, 2014) (granting leave to serve additional interrogatories in a civil rights action filed pursuant to 42 U.S.C. § 1983, noting plaintiff's "pro se status with limited resources and limited knowledge," that "the 'particularized showing' to obtain leave to serve additional interrogatories cannot be divorced from [p]laintiff's pro se status," and that "depositions, which would relieve some of the pressure created by having to respond to interrogatories, are simply not a realistic option, as incarcerated pro se litigants are rarely in the position to conduct depositions"); McClellan v. Kern County Sheriff's Office, 2015 WL 5732242, at *1 (E.D. Cal. Sept. 29, 2015) ("An incarcerated party's highly limited ability to conduct a deposition in prison may contribute to a finding of good cause to file additional interrogatories."). However, the additional interrogatories may not duplicate prior requests or answers, may not seek information beyond the Defendant's personal knowledge, and may not seek information that is beyond the scope of discovery permitted by Fed. R. Civ. P. 26. See Williams v. Cnty. of Sacramento Sheriff's Dept., 2007 WL 587237, at *2 (E.D. Cal. Feb 26, 2007) (plaintiff bears the burden of establishing

the need for additional interrogatories and that information sought is not duplicative); Robinson v. Adams, 2011 WL 2118753, at *11 (E.D. Cal. May 27, 2011) (same).

### 1) **Plaintiff's Proposed Supplemental Interrogatories to Defendant Hipp**

Plaintiff contends in his First Amended Complaint ("FAC") that Defendant Hipp, a Registered Dental Hygienist at California Men's Colony ("CMC"), examined him on February 23, 2012, and reviewed Plaintiff's CDC 7362 Health Care Services Request Form for dental treatment. See ECF No. 32 at 3, 9. Plaintiff further claims that Defendant Hipp failed to provide treatment and "ensure [that] plaintiff was scheduled for treatment after reviewing plaintiff's Treatment Plan from April 29, 2011.[1]" Id.

Defendants assert in their opposition that Defendant Hipp cleaned Plaintiff's teeth on February 23, 2012, and never performed a diagnostic oral examination of Plaintiff. Oppo. at 4. In her responses to Plaintiff's initial interrogatories, Defendant Hipp stated that on February 23, 2012, she saw Plaintiff, reviewed his chart, and performed "teeth cleaning, also known as a scaling," which "also included oral hygiene instructions, polishing, flossing, and peridex rinse after the cleaning." Reply, Exh. 4 at 29. Defendant Hipp then entered progress notes stating that Plaintiff needed fillings in teeth 4 and 14, and "submitted the paperwork for processing." Id. Defendant Hipp stated that she did not perform a diagnostic oral examination on February 23, 2012, or any other date, because such examination "is not within a dental hygienist's scope of practice." Id.

In Plaintiff's proposed supplemental Interrogatory Nos. 1 and 3-7, Plaintiff seeks

---

[1] Plaintiff alleges that the Treatment Plan noted that three to four of his cavities needed to be filled. Id.

additional information regarding the treatment provided by Defendant Hipp. The Court finds that proposed Interrogatory No. 4[2] duplicates prior interrogatories and therefore denies Plaintiff's request to serve it. The Court grants Plaintiff's request to serve supplemental Interrogatory Nos. 1, 3, 5-7. Some of these interrogatories include facts that may not be accurate so in answering the interrogatories, Defendant Hipp may identify any facts or assumptions that are inaccurate.

Defendant Hipp also described in her initial responses to Plaintiff's interrogatories CDCR's classifications of periodontal disease, and stated that dentists determine the appropriate classification, that according to CDCR's policies and procedures, inmates over 50 years of age are eligible for teeth cleaning once a year, and that inmates who have been diagnosed with gum disease may be placed on a four- to six-month eligible recall. Id. at 26, 30. Defendant Hipp did not respond to Plaintiff's interrogatories regarding CDCR's policies and procedures concerning cleaning inmate's teeth every 90 days on the basis that they were not relevant to any claim or defense in this suit. Id.

Defendant Hipp also stated in her initial interrogatory responses that a person's oral cavity is not sterile, that some bacteria is always present there, and that such bacteria can multiply and eventually lead to gum disease in the absence of good oral hygiene and dietary practices. Reply, Exh. 4 at 26-27. She also stated that oral hygiene practices, consistency of the gums, and diet may contribute to gum inflammation, but inflammation is always present at a very low

---

[2] Plaintiff lists two interrogatories numbered 4. Mot. at 12. The Court is denying Plaintiff's request as to the interrogatory asking if Defendant Hipp conducted a comprehensive dental examination. The Court grants Plaintiff's request to serve the second interrogatory seeking a definition of "interceptive care."

level. Id. Defendant Hipp also described signs and symptoms of periodontitis, and stated that untreated periodontal disease can lead to bone loss. Id. at 27-28. She further stated that depending on a person's diet, consistency of tooth structure, and daily oral hygiene practices, "plaque on teeth can break down tooth enamel and lead to tooth decay," and that "untreated tooth decay can progress to cavity formation and eventually result in tooth loss." Id. at 31. Defendant Hipp refused to answer Plaintiff's interrogatories asking "what conditions in the mouth" cause the development of fatty plaque, whether "inflammation in the mouth causes inflammation in the blood vessels," what are the acceptable levels of fluoride required to effectively treat tooth decay, and at what stage does inadequate oral health contribute to other medical conditions, claiming that she was not an expert in the area and could not provide an opinion on those subjects. Id. at 27-28, 31-32.

In the remaining proposed interrogatories, Plaintiff seeks information regarding CDCR policies and procedures, "acceptable community standards" for types of treatment and care, and various protocols and methodologies. The Court finds that supplemental Interrogatory No. 2 is overbroad and seeks information that is not limited in time and to the issues in this case. Supplemental Interrogatory Nos. 8 and 9 are overbroad and seek information regarding community standards, which is not the relevant standard for a section 1983 claim for deliberate indifference to dental needs. Supplemental Interrogatory Nos. 10 and 13 seek information that is irrelevant to the claims at issue in this case. The Court therefore denies Plaintiff's request to serve supplemental Interrogatory Nos. 2, 8-10, and 13. The Court grants Plaintiff's requests to

serve supplemental Interrogatory Nos. 4,[3] 11, and 12.

### 2) Plaintiff's Proposed Supplemental Interrogatories to Defendant Hensley

Plaintiff alleges that Defendant Hensley, a dentist at CMC, did not provide dental treatment in a timely manner. ECF No. 32 at 3. Plaintiff contends that while Defendant Hensley "efficiently identified [P]laintiff's dental needs on April 29, 2011, and May 8, 2012," he "failed to provide treatment that would cure [P]laintiff's dental needs." Id. Specifically, Plaintiff claims that on April 29, 2011, Defendant Hensley diagnosed him with three to four cavities and prepared a Treatment Plan, but did not provide treatment. Id. at 8-9. Plaintiff further contends that on May 8, 2012, Defendant Hensley saw Plaintiff, reviewed Plaintiff's April 29, 2011 Treatment Plan, prepared a new Treatment Plan, which noted that Plaintiff had developed three to four additional cavities, but failed to fill those cavities for at least fifteen months. Id. at 9.

Defendants claim in their opposition that they provided Plaintiff with information regarding Defendant Hensley's dental treatment by producing Plaintiff's dental records and Defendant Hensley's interrogatory responses. Oppo. at 3. Defendant Hensley stated in his prior interrogatory responses that during Plaintiff's April 29, 2011 appointment:

> X-rays were taken. On the Dental Examination and Treatment Plan Form, I documented the need for fillings on teeth numbers 4 and 14, and assigned a dental priority code of 3, which indicated that the work needed to be done within one year. I noted which cavity was to be filled first. I also noted scaling to be completed by February 28, 2012. I submitted the relevant documents for processing and appointment setting by an office technician.

Reply, Exh. 8 at 58; see also id. at 59. Defendant Hensley further stated that Registered Dental

---

[3] See supra note 2.

Assistant ("RDA") Behrens assisted him during Plaintiff's appointment on April 29, 2011, took bite wing x-rays, and charted the gum pocket measurements and which teeth needed fillings as determined by Defendant Hensley. Id. at 61-62. Further, Defendant Hensley responded to Plaintiff's interrogatory asking why he failed to ensure that Plaintiff's "treatment needs were met" after the April 29, 2011 appointment, by stating the following:

> I was not able to set inmate appointments because I did not have access to that computer program, and before the computer program, I did not have access to scheduling inmates for appointments. Because I am assigned numerous inmates, I am not able to monitor scheduling issues for individual inmates. Additionally, it is not unusual for an inmate to be transferred to a different yard or a different prison. In such a case, the appointment would be set with a different dentist. I have never been aware of a problem with scheduling inmates for follow-up dental exams at CMC. On May 8, 2012, Plaintiff was on my schedule for an annual exam, which would not allow enough time for fillings. I prepared a new treatment plan, and assigned a dental priority code 2 so that the treatment would be completed within four months.

Id. at 60. With regard to the May 8, 2012 appointment, Defendant Hensley also stated that he examined Plaintiff's teeth, noted the needed treatment and the time frame for the treatment, prepared a Daily Dental Encounter Form, and "submitted the relevant documents for processing and appointment setting by an office technician." Id. at 59, 63. In response to Plaintiff's interrogatory asking to explain why Defendant Hensley's "dental conclusions on May 8, 2012, did not result in treatment [during] the eight months [Plaintiff] remained at CMC-East after that exam," Defendant Hensley stated that "he d[id] not know." Id. at 63.

In response to Plaintiff's interrogatory asking to explain "current and past" CMC-East's protocol(s) for processing treatment plans for inmates diagnosed with cavities, Defendant Hensley stated that in 2011, "scheduling was not computerized," and that office technicians scheduled follow-up appointments "by hand from the paperwork submitted by the dentist."

Reply, Exh. 8 at 58-59. He stated that in 2012, a dentist submitted relevant paperwork and an office technician entered information into the computer to schedule inmate appointments. Id. at 59. Defendant Hensley explained the terms "HBP," "HTN," "fatty plaque," and "U.O.P protocol," stated that a patient's vitals are taken before an exam to monitor the patient's overall health, and that Plaintiff's blood pressure was within acceptable levels during his dental exams. See Reply, Exh. 8 at 61-62, 64. Defendant Hensley also stated that Plaintiff's Plaque Index of 38% on April 29, 2011, and 52% on May 8, 2012, indicated that Plaintiff's plaque buildup increased, but was still within an acceptable range, and that the increase could have been caused by Plaintiff not brushing his teeth properly, eating sugary foods, or using certain drugs. Id. at 64. He also noted that although Plaintiff had more cavities in 2012 than in 2011, the condition of Plaintiff's gums improved. See id. at 63-65. Additionally, Defendant Hensley stated in his prior interrogatory responses that the process of decay is gradual, and if left untreated, can penetrate through the enamel layer into the softer tissue below, and that cavity causing bacteria thrive on carbohydrates, especially sugars. Id. at 63-64. Finally, in response to Plaintiff's interrogatory asking whether there is a "link between periodontal infection and vascular disease," Defendant Hensley stated that "some studies show a link and some do not," that he was not an expert in this area, and refused to provide an opinion regarding the subject. Id. at 65.

The majority of Plaintiff's proposed interrogatories seek relevant information regarding Defendant Hensley's assessment of Plaintiff's dental condition on April 29, 2011 and May 8, 2012, the paperwork Defendant Hensley generated to schedule Plaintiff for a follow-up treatment after his April 29, 2011 and May 8, 2012 appointments with Plaintiff, any oral hygiene

and plaque control training that Defendant Hensley might have provided to Plaintiff during those appointments, and the time required to perform certain procedures. While some of the interrogatories repeat prior requests, the Court will allow Plaintiff to serve those requests to the extent they also seek new or clarifying information. The Court thus grants Plaintiff leave to serve supplemental Interrogatory Nos. 1-3[4], 6-8, 10-13. The Court denies Plaintiff's request to serve Interrogatory Nos. 3-5 and 9 as they are repetitive of Plaintiff's prior interrogatories, seek information which already has been provided to Plaintiff, or seek irrelevant information.

### 3) Plaintiff's Proposed Supplemental Interrogatories to Defendant Sabati

Plaintiff claims in his FAC that Defendant Sabati, a Dentist at Richard J. Donovan Correctional Facility ("RJD"), failed to provide dental treatment in a timely manner. ECF No. 32 at 5. Specifically, Plaintiff alleges that Defendant Sabati examined him on February 11, 2013, reviewed Plaintiff's Treatment Plans dated April 29, 2011, and May 8, 2012, and noted seven untreated cavities. Id. at 5, 10. Plaintiff further contends that on February 11, 2013, he submitted a request to fill those cavities, that Defendant Sabati "promised" to fill the cavities within 30 days, but failed to do so. Id.

Defendants assert that Defendant Sabati saw Plaintiff on February 11, 2013, shortly after Plaintiff's transfer to RJD, that Plaintiff's appointment was a 72-hour triage appointment, and that Defendant Sabati noted that Plaintiff's May 8, 2012 Treatment Plan needed to be completed. Oppo. at 5. With respect to the February 11, 2013 appointment with Plaintiff, Defendant Sabati

---

[4] The Court notes that Plaintiff's proposed supplemental interrogatories to Defendant Hensley contain two Interrogatories No. 3. See Mot. at 23-24. The Court denies Plaintiff's request to serve the first one seeking changes to the April 29, 2011 treatment plan and grants the request as to the second one seeking the names of technicians.

stated in a prior interrogatory response that:

> [d]ue to the passage of time, I do not recall the appointment, but progress notes indicate that this was not a regular dental appointment, but a 72 hour triage appointment, which means an appointment shortly after an inmate is transferred to a new prison to generally a[ss]ess dental needs. The progress note indicates that I asked that a completion of Plaintiff's May 8, 2012 treatment plan be scheduled. The progress note also indicates that I had 11 other patients on my schedule that day; thus, I would not have been able to perform an annual dental exam at that time.

Reply, Exh. 7 at 50. Defendant Sabati further stated that on February 11, 2013, RDA Mendoza assisted him with Plaintiff's exam, and that an office technician was responsible for "entering the information into the computer and scheduling [Plaintiff's follow-up] appointment." Id. at 49-50.

Defendant Sabati also stated that a cavity forms when decay goes through the tooth's hard surface layer, that decay could subsequently reach the softer layers of the tooth, and defined the term "Plaque Index of 52%." Id. at 51, 53. Defendant Sabati explained that bacteria are always present in a person's mouth, that bacteria in plaque produce acids, that tooth decay does not develop into plaque, and that untreated tooth decay does not produce bacteria, but can progress to cavity formation and eventually result in tooth loss. Id. at 51-53. Defendant Sabati also stated that a person's diet, consistency of the tooth structure, and daily oral hygiene may affect the time frame for "the acids in plaque to begin removing minerals in the tooth's hard, outer enamel"/"bacteria to build up on teeth in order to make gums prone to infection," and result in gum inflammation. See id. at 52-53. Defendant Sabati refused to answer Plaintiff's interrogatory seeking the names of eleven patients that he was scheduled to see on February 11, 2013, on relevance, proportionality, privacy and confidentiality grounds. Id. at 49.

The Court notes that some of the proposed requests assume facts which may not be accurate and/or somewhat repetitive, however, the Court will allow the requests to the extent they seek new or clarifying relevant information. Accordingly, the Court denies Plaintiff's request to serve proposed supplemental Interrogatory No. 6 but grants Plaintiff's request as to the remaining interrogatories.

### 4) Plaintiff's Proposed Supplemental Interrogatories to Defendant Nguyen

Plaintiff alleges in his FAC that Defendant Nguyen, a Dentist at RJD, failed to provide dental treatment in a timely manner. ECF No. 32 at 6. In support, Plaintiff contends that on January 14,[5] 2014, Defendant Nguyen examined him, reviewed Plaintiff's May 8, 2012 Treatment Plan, was "made aware" that Plaintiff had seven untreated cavities and was in pain, received Plaintiff's request to fill the cavities, but failed to provide treatment for approximately fourteen months. See id. Plaintiff further contends that on December 30, 2014, Defendant Nguyen conducted a dental examination in response to Plaintiff's 602 appeal, noted that Plaintiff had developed ten to fifteen new cavities and a white lesion on the left side of his lower lip, and submitted an urgent request for a specialist examination of the lesion. Id. at 12. On January 16, 2015, Defendant Nguyen saw Plaintiff during a follow-up examination, and on February 24, 2015, extracted Plaintiff's lower left tooth. Id. at 13.

Defendants claim that Defendant Nguyen requested that Plaintiff be scheduled for additional treatment within one week of Plaintiff's January 27, 2014 appointment, that he

---

[5] The Court notes that Plaintiff's initial interrogatories served on Defendant Nguyen, Defendant Nguyen's answers, and Plaintiff's supplemental interrogatories directed to Defendant Nguyen list January 27, 2014 as the date of Plaintiff's appointment with Defendant Nguyen. See Mot., Exh. 4 at 29-33; Reply, Exh. 9 at 70-71.

interviewed Plaintiff on December 30, 2014 regarding Plaintiff's grievance, examined Plaintiff, and generated a new treatment plan, and that Plaintiff started receiving dental care shortly thereafter until it was complete.  Oppo. at 5.  In his prior interrogatory responses Defendant Nguyen stated that on January 27, 2014, he saw Plaintiff and determined that Plaintiff's treatment plan was over a year-and-a-half old, that he offered to perform another exam, and that Plaintiff agreed.  See Reply, Exh. 9 at 71-72.  Defendant Nguyen also stated that he directed on the Daily Encounter Form dated January 27, 2014, that Plaintiff be scheduled to come back in one week, specified that the appointment should be set for February 4, 2014, and "submitted the form to the office technicians for processing."  Id. at 70.  Defendant Nguyen also stated that RDA Rubacava assisted him on January 27, 2014.  Id. at 71.

Further, Defendant Nguyen stated that on December 30, 2014, he interviewed Plaintiff in connection with Plaintiff's grievance RJD Log No. HC 14052486, completed a dental exam, generated a new treatment plan, and discussed the treatment plan with Plaintiff.  Reply, Exh. 9 at 72, 76.  In response to Plaintiff's interrogatory asking to specify the date and names of dental personnel who failed to enter Plaintiff's previous treatment plan at CMC into the computer, Defendant Nguyen stated that the previous treatment plan would have been entered at CMC shortly after the treatment plan was submitted, and that he "ha[d] no idea who would have been involved."  Id. at 75.  Defendant Nguyen further stated that Plaintiff was seen for dental treatment on January 6, 2015, and continued to receive dental treatment until his treatment plan was complete.  Id. at 76.

Defendant Nguyen also stated in his prior interrogatory answers that pursuant to CDCR's and/or RJD's policies and procedures, "[r]elevant findings are recorded in the patient's dental

records." Id. at 74.  Defendant Nguyen refused to answer Plaintiff's interrogatory asking to "[e]xplain any and all policies or procedures within RJDCF for the number of patients on a dentist daily schedule" on relevance and proportionality grounds.  Id.  Defendant Nguyen also refused to provide scheduling/or appointment data for inmate annual examinations scheduled for December 30, 2014, and his conclusions about inmate R. Ware's First Level Health Care Appeal, claiming that such information was not relevant, not proportional to the needs of the case, and violated privacy and confidentiality rights of third parties.  See id. at 72-73, 75.  Finally, Defendant Nguyen stated in his prior interrogatory answers that swelling in the mouth does not "in and of itself" make the gums prone to infection, could have little effect on a person's oral health, or could cause discomfort, and listed various conditions that can cause pain in the mouth.  Id. at 70-72.

The majority of the proposed interrogatories seek relevant follow-up information concerning Plaintiff's January 27, 2014 appointment, whether Plaintiff received any instructions in oral hygiene and plaque control during the appointment, what paperwork Defendant Nguyen was required to generate concerning the appointment, and the definition of terms or procedures.  Again, the Court notes that some of the proposed interrogatories assume facts which may not be accurate and/or somewhat repetitive, however, the Court will allow the requests to the extent they seek new or clarifying relevant information.  The Court thus grants Plaintiff's request to serve supplemental Interrogatory Nos. 1, 3-9[6], 11-19.  The Court denies Plaintiff's request as to

---

[6] To the extent Interrogatory No. 8 seeks information about dental patients other than Plaintiff, it is denied.  The Court grants Interrogatory No. 8 only to the extent it requests information about Plaintiff's dental care.

Interrogatory Nos. 2 and 10 as they seek irrelevant information or are duplicative.

## SUMMARY AND CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for leave to serve supplemental interrogatories. The Court directs that the proposed supplemental interrogatories authorized by this order are deemed served as of the date of this order. Defendants must answer the authorized interrogatories by **March 24, 2017**:

1) Defendant Hipp must answer Plaintiff's supplemental Interrogatory Nos. 1, 3-7, 11-12;

2) Defendant Hensley must answer Plaintiff's supplemental Interrogatory Nos. 1-3, 6-8, 10-13;

3) Defendant Sabati must answer Plaintiff's supplemental Interrogatory Nos. 1-5, 7-14;

4) Defendant Nguyen must answer Plaintiff's supplemental Interrogatory Nos. 1, 3-9, 11-19.

**IT IS SO ORDERED.**

Dated: 2/23/2017

Hon. Barbara L. Major
United States Magistrate Judge