UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY ROBERTS,<br><br>Plaintiff,<br><br>v.<br><br>S. HENSLEY, et al.,<br><br>Defendants. | Case No.: 15cv1871-LAB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 61]** |

This Report and Recommendation is submitted to United States District Court Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**.

## I.    PROCEDURAL BACKGROUND

Plaintiff Tony Roberts, a state prisoner proceeding pro se and in forma pauperis, constructively filed a complaint on August 17, 2015 under the Civil Rights Act, 42 U.S.C. § 1983 against the following defendants in their individual capacities:  S. Hensley, dentist; N. Hipp, registered dental hygienist; A. Malek, dentist; K. Behrens, registered dental assistant; V. Sanchez, registered dental assistant; M. Silveira, office technician; N. Sabati, dentist; E. Mendoza, registered dental assistant; S. Nguyen, dentist; and DOE 1 through 20, alleging (1)

deliberate indifference to his dental care in violation of the Eighth Amendment of the United States Constitution, (2) deliberate indifference to his right to personal security in violation of the Fourteenth Amendment, (3) negligence under state law, and (4) intentional infliction of emotional distress under state law.  ECF No. 1 at 7, 12-18, 34-36.

On June 3, 2016, Defendants filed a motion to dismiss the following portions of Plaintiff's complaint:  (1) claims against Defendant Silveira; (2) claims against Defendant Sanchez; (3) a Fourteenth Amendment claim for deliberate indifference to Plaintiff's right to personal security interests; (4) negligence claims under state law; and (5) intentional infliction of emotional distress claims under state law.  ECF No. 22-1 at 1-2.  Plaintiff submitted a statement of non-opposition to the motion to dismiss.  ECF No. 30.  Judge Burns granted the motion and ordered Plaintiff to file an amended complaint consistent with the motion and the court's order.  ECF No. 31.

On July 29, 2016, Plaintiff filed a First Amended Complaint ("FAC") in which he removed the following: Sanchez and Silveira as named defendants, the Fourteenth Amendment claim for deliberate indifference, and the state law claims of negligence and intentional infliction of emotional distress.  ECF No. 32 ("FAC").  Defendants filed an Answer to the FAC on August 11, 2016.  ECF No. 33 ("Answer").

On July 27, 2017, Defendants filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, along with a Memorandum of Points and Authorities [ECF No. 61-2 ("MSJ Mem.")], a statement of allegedly undisputed material facts in support of Defendants' Motion for Summary Judgment [ECF No. 61-3], portions of a transcript of Plaintiff's deposition testimony made under oath [ECF No. 61-4 ("Plaintiff Depo.")], supporting exhibits [ECF Nos. 61-4 to 61-7], and nine supporting declarations [ECF No. 61-8, Declaration of Sylvie Snyder ("Snyder Decl."); ECF No. 61-9, Declaration of Custodian of Dental Records ("Custodian Decl."); ECF No. 61-10, Declaration of N. Sabati ("Sabati Decl."); ECF No. 61-11, Declaration of S. Nguyen ("Nguyen Decl."); ECF No. 61-12, Declaration of K. McIntire (previously Behrens) ("Behrens/McIntire Decl."); ECF No. 61-13, Declaration of E. Mendoza ("Mendoza Decl."); ECF No. 61-14, Declaration of A. Malek ("Malek Decl."); ECF No. 61-15, Declaration of S. Hensley

("Hensley Decl."); and ECF No. 61-16, Declaration of N. Hipp ("Hipp Decl.")].  Defendants argue that summary judgment in their favor is appropriate because (1) Plaintiff cannot show that any Defendant was deliberately indifferent to his dental care, and (2) Defendants are entitled to qualified immunity.  MSJ Mem. at 7.

On July 27, 2017, the Court issued a notice to Plaintiff of the requirements for opposing summary judgment pursuant to <u>Rand v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998) (en banc) and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988), and set a briefing schedule.  ECF No. 62. Plaintiff timely filed his opposition, which includes a declaration by Plaintiff signed under penalty of perjury ("Plaintiff Decl.") and a supporting exhibit of portions of the August 2010 and September 2014 Dental Services policies and procedures for the Division of Correctional Health Care Services ("Dental Servs. Manual").  ECF No. 63 ("MSJ Oppo.").  Defendants timely replied. ECF No. 64 ("MSJ Reply").

## II.  **FACTUAL BACKGROUND**

The following facts are taken in the light most favorable to Plaintiff and are undisputed unless otherwise indicated.  The facts pertain to the relevant time period for this cause of action.

### A.  **Dental Care Policies and Procedures**

Inmates within the California Department of Corrections and Rehabilitation ("CDCR") system may request dental treatment by (1) requesting a comprehensive dental exam after notification of eligibility by submitting a Health Care Services Request Form ("Form 7362"); (2) requesting a follow-up appointment for a dental encounter after completion of a current dental encounter; (3) submitting a Form 7362 indicating the service requested; or (4) submitting a prison grievance complaining that dental services had not been provided.  <u>See</u> MSJ Oppo. at 27 (Plaintiff Decl. ¶¶ 7, 14), 32-35 (Dental Servs. Manual, Chapter 2.3), 40-41 (Dental Servs. Manual, Chapter 5.3); Hensley Decl. ¶ 9; Malek Decl. ¶ 9; Sabati Decl. ¶ 9; Nguyen Decl. ¶ 9.

If an inmate requires additional dental care after a comprehensive dental exam, the dentist prepares a Treatment Plan setting forth the necessary procedures and assigned Dental Priority Code ("DPC") for each item.  <u>See</u> Hensley Decl. ¶ 3; Malek Decl. ¶ 3; Sabati Decl. ¶ 3; Nguyen Decl. ¶ 3; MSJ Oppo. at 32-34 (Dental Servs. Manual, Chapter 2.3), 42 (Dental Servs.

Manual, Chapter 5.4). Dental treatments are prioritized as follows: DPC 1 (treatment within one to sixty days) for urgent care; DPC 2 (treatment within 120 days) for interceptive care such as advanced cavities, advanced periodontal pathology, missing most teeth, or moderate or advanced periodontitis; DPC 3 (treatment within one year) for routine rehabilitative care such as cavity fillings; DPC 4 indicating no dental care is needed; and DPC 5 for special needs care. See Hensley Decl. ¶ 4; Malek Decl. ¶ 4; Sabati Decl. ¶ 4; Nguyen Decl. ¶ 4; ECF No. 61-6 at 2 (DEF/RFP 97, Dental Priority Classification 5.4-3); MSJ Oppo. at 42 (Dental Servs. Manual, Chapter 5.4).

Only dentists, not registered dental hygienists or dental assistants, are authorized to prepare Treatment Plans and assign DPC codes. See Hensley Decl. ¶ 5; Malek Decl. ¶ 5; Sabati Decl. ¶ 5; Nguyen Decl. ¶ 5; see also MSJ Oppo. at 42 (Dental Servs. Manual, Chapter 5.4).

If an inmate's Treatment Plan is not complete after an appointment, the dentist or dental hygienist prepares a Daily Dental Encounter Form noting the dental work that needs to be scheduled next and the DPC.[1] Hensley Decl. ¶ 6; Malek Decl. ¶ 6; Sabati Decl. ¶ 6; Nguyen Decl. ¶ 6; Hipp Decl. ¶ 2. The Daily Dental Encounter Form is then submitted for processing and scheduling. Hensley Decl. ¶ 6; Malek Decl. ¶ 6; Sabati Decl. ¶ 6; Nguyen Decl. ¶ 6; Hipp Decl. ¶ 2.

Dentists, dental hygienists, and registered dental assistants had no access to the appointment-setting computer program and could not set appointments. Hensley Decl. ¶ 7; Malek Decl. ¶ 7; Sabati Decl. ¶ 7; Nguyen Decl. ¶ 7; Hipp Decl. ¶ 3; Behrens/McIntire Decl. ¶ 2; Mendoza Decl. ¶ 2.

Neither dentists, dental hygienists, registered dental assistants, nor the dental-care

---

[1] Defendants Hensley, Malek, Sabati, Nguyen, and Hipp declare that the "previously assigned DPC" is noted on the Daily Dental Encounter Form. Hensley Decl. ¶ 6; Malek Decl. ¶ 6; Sabati Decl. ¶ 6; Nguyen Decl. ¶ 6; Hipp Decl. ¶ 2. However, in reviewing the Daily Dental Encounter Forms from Plaintiff's medical record submitted as exhibits, the Court notes that there are spaces on the Daily Dental Encounter Form to indicate both the "DPC Before Encounter" and "DPC After Encounter." ECF No. 61-5 at 5-6 (DEF/RFP 665-66), 11-12 (DEF/RFP 671-72), 16-17 (DEF/RFP 678-79), 20-21 (DEF/RFP 682-83), 24-26 (DEF/RFP 686-88).

section were responsible for providing toothbrushes or toothpaste/toothpowder to indigent inmates. Hensley Decl. ¶ 10; Malek Decl. ¶ 10; Sabati Decl. ¶ 10; Nguyen Decl. ¶ 10; Hipp Decl. ¶ 5; Behrens/McIntire Decl. ¶ 4; Mendoza Decl. ¶ 4.

### B.    Defendants

#### 1.    S. Hensley

S. Hensley is a licensed dentist with experience working at one or more California prisons for several years. Hensley Decl. ¶ 1. He is familiar with the dental policies and procedures that relate to inmates in California prisons. Id. Dr. Hensley declares that it was not reasonable for dental-care providers such as him to personally follow up to determine whether an individual's appointment had been scheduled because: (1) dental care providers were assigned to several hundred inmates; (2) inmates were often transferred to other yards or other prisons without notice; and (3) there were procedures in place for inmates to bring delays in appointment-setting to the prison's attention. Id. ¶ 8.

Dr. Hensley declares that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling. Id. ¶ 7. When Dr. Hensley examined Plaintiff on April 29, 2011, he was not aware of problems with inmate appointment scheduling. Id. ¶ 14. In 2012, Dr. Hensley was not aware of problems with inmate appointment scheduling other than Plaintiff's lack of treatment for two cavities between the time they were diagnosed by Dr. Hensley on April 29, 2011 and May 8, 2012 when Plaintiff informed Dr. Hensley of the lack of treatment. Id. ¶¶ 14-16, 19.

#### 2.    A. Malek

A. Malek is a licensed dentist with experience working at one or more California prisons for several years. Malek Decl. ¶ 1. She is familiar with the dental policies and procedures that relate to inmates in California prisons. Id. Dr. Malek declares that it was not reasonable for dental-care providers such as her to personally follow up to determine whether an individual's appointment had been scheduled because: (1) dental care providers were assigned to several hundred inmates; (2) inmates were often transferred to other yards or other prisons without notice; and (3) there were procedures in place for inmates to bring delays in appointment-

setting to the prison's attention. Id. ¶ 8.

Dr. Malek declares that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling. Id. ¶ 7. On February 23, 2012, Dr. Malek had no reason to believe that Plaintiff would not timely receive dental services. Id. ¶ 13.

### 3. N. Hipp

N. Hipp is a licensed dental hygienist with experience working at one or more California prisons for several years. Hipp Decl. ¶ 1. She is familiar with the dental policies and procedures that relate to inmates in California prisons. Id. Hipp declares that it was not reasonable for dental-care providers such as her to personally follow up to determine whether an individual's appointment had been scheduled because: (1) dental care providers were assigned to several hundred inmates; (2) inmates were often transferred to other yards or other prisons without notice; and (3) there were procedures in place for inmates to bring delays in appointment-setting to the prison's attention. Id. ¶ 4.

Hipp declares that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling. Id. ¶ 3. On February 23, 2012, Hipp was not aware of problems with inmate appointment scheduling and expected that Plaintiff's next treatment would be scheduled as noted. Id. ¶ 6.

### 4. K. McIntire (previously K. Behrens)

K. McIntire (previously K. Behrens) is a registered dental assistant with experience working at one or more California prisons for several years. Behrens/McIntire Decl. ¶ 1. She is familiar with the dental policies and procedures that relate to inmates in California prisons. Id. McIntire declares that it was not reasonable for dental-care providers such as her to personally follow up to determine whether an individual's appointment had been scheduled because: (1) dental care providers were assigned to several hundred inmates; (2) inmates were often transferred to other yards or other prisons without notice; and (3) there were procedures in place for inmates to bring delays in appointment-setting to the prison's attention. Id. ¶ 3.

McIntire declares that the appointment-setting function was performed by others based

6

upon submittal of the Daily Dental Encounter Form for processing and scheduling.  <u>Id.</u> ¶ 2. On May 8, 2012, McIntire was not aware of problems with inmate appointment scheduling.  <u>Id.</u> ¶ 5.

### 5. E. Mendoza

E. Mendoza is a registered dental assistant with experience working at one or more California prisons for several years.  Mendoza Decl. ¶ 1.  She is familiar with the dental policies and procedures that relate to inmates in California prisons.  <u>Id.</u>  Mendoza declares that it was not reasonable for dental-care providers such as her to personally follow up to determine whether an individual's appointment had been scheduled because: (1) dental care providers were assigned to several hundred inmates; (2) inmates were often transferred to other yards or other prisons without notice; and (3) there were procedures in place for inmates to bring delays in appointment-setting to the prison's attention.  <u>Id.</u> ¶ 3.

Mendoza declares that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling.  <u>Id.</u> ¶ 2.  On February 11, 2013, Mendoza was not aware of problems with inmate appointment scheduling at Richard J. Donovan Correctional Facility.  <u>Id.</u> ¶ 5.

### 6. N. Sabati

N. Sabati is a licensed dentist with experience working at one or more California prisons for several years.  Sabati Decl. ¶ 1.  She is familiar with the dental policies and procedures that relate to inmates in California prisons.  <u>Id.</u>  Dr. Sabati declares that it was not reasonable for dental-care providers such as her to personally follow up to determine whether an individual's appointment had been scheduled because: (1) dental care providers were assigned to several hundred inmates; (2) inmates were often transferred to other yards or other prisons without notice; and (3) there were procedures in place for inmates to bring delays in appointment-setting to the prison's attention.  <u>Id.</u> ¶ 8.

Dr. Sabati declares that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling.  <u>Id.</u> ¶ 7.  On February 11, 2013, Dr. Sabati was not aware of problems with inmate appointment scheduling

and expected that Plaintiff's next encounter would be scheduled as noted.  Id. ¶ 14.

### 7.    S. Nguyen

S. Nguyen is a licensed dentist with experience working at one or more California prisons for several years.  Nguyen Decl. ¶ 1.  He is familiar with the dental policies and procedures that relate to inmates in California prisons.  Id.  Dr. Nguyen declares that it was not reasonable for dental-care providers such as him to personally follow up to determine whether an individual's appointment had been scheduled because: (1) dental care providers were assigned to several hundred inmates; (2) inmates were often transferred to other yards or other prisons without notice; and (3) there were procedures in place for inmates to bring delays in appointment-setting to the prison's attention.  Id. ¶ 8.

Dr. Nguyen declares that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling. Id. ¶ 7.  In January 2014, Dr. Nguyen was not aware of problems at Richard J. Donovan Correctional Facility with inmate appointment scheduling, other than Plaintiff's complaint of lack of treatment of at least seven cavities for over a year-and-a-half.  Id. ¶¶ 12, 15.  Dr. Nguyen expected that Plaintiff's next encounter would be scheduled one week later, as he indicated. Id. ¶¶ 13, 15.

Dr. Nguyen next saw Plaintiff on December 30, 2014 when Dr. Nguyen conducted a grievance interview with Plaintiff, and then immediately conducted a comprehensive exam and prepared a new Treatment Plan.  Id. ¶ 16.

### C.    Plaintiff's Dental Care

Plaintiff alleges and Defendants admit that Defendants were acting under the color of state law at all times relevant to this cause of action.  FAC ¶ 6; Answer at 2.

On February 28, 2011, Plaintiff, an inmate at California Men's Colony ("CMC"), requested a comprehensive dental exam by filling out a Form 7362 after receiving notification that he was eligible for the exam.  Plaintiff Depo. at 4-6; ECF No. 61-5 at 2 (DEF/RFP 658).  On April 29, 2011, Dr. Hensley performed the exam and prepared a Treatment Plan for Plaintiff to have two

cavities filled and a deep cleaning/scaling.[2]  Plaintiff Depo. at 6; Hensley Decl. ¶ 12, ECF No. 61-5 at 3 (DEF/RFP 660), 4 (DEP/RFP 662).  Dr. Hensley assigned a DPC of 3, indicating treatment to be completed within one year.  Hensley Decl. ¶ 12; ECF No. 61-5 at 3 (DEF/RFP 660).  After the appointment, Dr. Hensley submitted a Daily Dental Encounter Form for processing.  Hensley Decl. ¶ 14; ECF No. 61-5 at 5-6 (DEF/RFP 665-66).  Dr. Hensley indicated on the form that the next dental encounter should be the dental scaling.  Hensley Decl. ¶ 14; ECF No. 61-5 at 6 (DEF/RFP 666).  Plaintiff was instructed to sign and date a Form 7362 and leave the section indicating the reason for the request blank.[3]  MSJ Oppo. at 25 (Plaintiff Decl. ¶ 2); ECF No. 61-5 at 8 (DEF/RRFP 668).  Plaintiff complied and returned the form to Dr. Hensley.  MSJ Oppo. at 25 (Plaintiff Decl. ¶ 2); ECF No. 61-5 at 8 (DEF/RFP 668).

On February 14, 2012, Plaintiff submitted a Form 7362 requesting a dental exam after receiving notification that he was eligible for the exam.  Plaintiff Depo. at 8; ECF No. 61-5 at 7 (DEF/RFP 667).  In the section on the form that asks for the reason for requesting health care services and specifically asks the inmate to "Describe Your Health Problem And How Long You Have Had the Problem," Plaintiff wrote only, "I want a dental exam."  ECF No. 61-5 at 7 (DEF/RFP 667).

On February 23, 2012, Plaintiff's teeth were cleaned by dental scaling.  Plaintiff Depo. at 8; Hipp Decl. ¶ 6; ECF No. 61-5 at 10 (DEF/RFP 670).  Prior to the cleaning, Dr. Malek met with Plaintiff to explain the dental scaling procedure and to obtain Plaintiff's consent or refusal.  Plaintiff Depo. at 8-9; Malek Decl. ¶ 12; ECF No. 61-5 at 9 (DEF/RFP 669).  Plaintiff states that Dr. Malek told him that he would be getting his teeth cleaned because the cleaning had been ordered by the dentist he had seen in April.  Plaintiff Depo. at 9.  Dr. Malek told Plaintiff that he

_____

[2] Although Plaintiff claims that Dr. Hensley found three cavities [MSJ Oppo. at 13], the copy of the Treatment Plan submitted as an exhibit by Defendants indicates that two cavities were diagnosed on April 29, 2011.  ECF No. 61-5 at 3 (DEF/RFP 660).

[3] Plaintiff states in another section of his opposition that he was instructed to sign and date two Forms 7362 and that he did so.  MSJ Oppo. at 4.  However, he cites to his signed declaration as support, and the declaration states that he was instructed to sign and date only one Form 7362.  Id. at 25 (Plaintiff Decl. ¶ 2).

would be scheduled for the cavity fillings within a short period of time. Plaintiff Depo. at 9. Dental hygienist Hipp took the Form 7362 signed and dated by Plaintiff on April 29, 2011, wrote "scaling" in the section indicating reason for the request, signed, and dated it February 23, 2012. ECF No 61-5 at 8 (DEF/RFP 668). Hipp performed the dental scaling. Plaintiff Depo. at 8, 10; Hipp Decl. ¶ 6. After the scaling, Plaintiff states that Dr. Malek asked him to sign a Supplemental Dental Progress Notes form requesting further dental treatment and a Form 7362.[4] MSJ Oppo. at 25 (Plaintiff Decl. ¶ 3); ECF No. 61-5 at 10 (DEF/RFP 670). Plaintiff signed the Progress Notes form, and signed and dated the Form 7362 and left the section indicating the reason for the request blank, as instructed by Dr. Malek, and returned them to Dr. Malek. MSJ Oppo. at 25 (Plaintiff Decl. ¶ 3). Hipp completed the Supplemental Dental Progress Notes form, indicating that on Plaintiff's next visit ("N.V." on the form), he needed two fillings and the DPC was 3. Hipp Decl. ¶ 6; ECF No. 61-5 at 10 (DEF/RFP 670); MSJ Oppo. at 25 (Plaintiff Decl. ¶ 3). The same day, Hipp also prepared and submitted a Daily Dental Encounter Form noting two fillings needed to be scheduled, that Plaintiff had requested further treatment, and a DPC of 3 was indicated for both "DPC Before Encounter" and "DPC After Encounter." Hipp Decl. ¶ 6; ECF No. 61-5 at 11-12 (DEF/RFP 671-72).

On May 8, 2012, Plaintiff appeared before Dr. Hensley for a comprehensive dental examination. Hensley Decl. ¶ 15; Plaintiff Depo. at 10-11; ECF No. 61-5 at 13 ( DEF/RFP 674), 16 (DEF/RFP 678). Prior to the exam, registered dental assistant Behrens (now McIntire) gathered Plaintiff's dental records, confirmed that Plaintiff was the correct inmate for the annual exam, took his bite wing x-rays, and took his vital signs. Behrens/McIntire Decl. ¶ 5; ECF No. 61-5 at 13 (DEF/RFP 674). During the exam, Plaintiff told Dr. Hensley that he needed to have cavities filled. Plaintiff Depo. at 11. Dr. Hensley told Plaintiff that he did not have time during the comprehensive exam appointment to fill the cavities. Plaintiff Depo. at 11; Hensley Decl. ¶ 15.

---

[4] Plaintiff claims in a different section of his opposition that he signed and dated two Forms 7362. MSJ Oppo. at 5. However, he cites to his signed declaration as support, and the declaration states that he signed and dated only one Form 7362. Id. at 25 (Plaintiff Decl. ¶ 3).

Dr. Hensley continued the exam and found five additional cavities, so he prepared a new Treatment Plan. Hensley Decl. ¶15; ECF No. 61-5 at 13-14 (DEF/RFP 674, 676). Although Plaintiff's oral conditions technically fell under DPC 3, Dr. Hensley assigned a DPC of 2 for the fillings on both the Supplemental Progress Notes form and the Treatment Plan, indicating completion within four months, because the two cavities from the April 29, 2011 treatment plan had not yet been filled. Hensley Decl. ¶ 16; ECF No. 61-5 at 13-14 (DEF/RFP 674, 676). Dr. Hensley also ordered a dental cleaning within four months on the Treatment Plan. Hensley Decl. ¶ 16; ECF No. 61-5 at 14 (DEF/RFP 676). The same day, Dr. Hensley submitted a Daily Dental Encounter Form that indicated a filling as the next encounter reason and a DPC of 2. Hensley Decl. ¶ 17; ECF No. 61-5 at 16-17 (DEF/RFP 678-79). Dr. Hensley claims that although cavities are often scheduled for filling by quadrant, he ordered this cavity to be scheduled first because it was fairly deep and might require more time. Hensley Decl. ¶ 18; ECF No. 61-5 at 17 (DEF/RFP 679). Plaintiff claims that after the exam, he signed and dated a Supplemental Dental Progress Notes form requesting further dental treatment and a Form 7362, leaving the reason for request section blank, as instructed by Dr. Hensley, and then returned the forms to Dr. Hensley. MSJ Oppo. at 26 (Plaintiff Decl. ¶ 4); ECF No. 61-5 at 13 (DEF/RFP 674). Plaintiff also signed an acknowledgment of receipt of "The Facts About Fillings" fact sheet and dated it May 8, 2012. Hensley Decl. ¶ 17; ECF No. 61-5 at 15 (DEF/RFP 677).

Plaintiff claims that he filled out a Form 7362 in October 2012, while he was in administrative segregation, requesting treatment and indicating that he was having pain while chewing, sensitivity, toothache, and sometimes headaches. Plaintiff Depo. at 12-13; MSJ Oppo. at 27 (Plaintiff Decl. ¶ 8). Plaintiff saw a correctional officer take it out of his tray slot as the officer picked up mail from each cell. Plaintiff Depo. at 13. When nothing happened regarding the form, Plaintiff claims that he submitted another Form 7362, while he was still in administrative segregation, about three or four weeks later requesting dental care "in a hurry." Plaintiff Depo. at 14; MSJ Oppo. at 27 (Plaintiff Decl. ¶ 8). There is no record of these forms. Plaintiff Depo. at 13. Plaintiff acknowledges that he could have submitted a grievance, but he did not because he thought he would eventually be seen, and he did not want to subject himself

to retaliation. Plaintiff Depo. at 15; MSJ Oppo. at 28 (Plaintiff Decl. ¶ 14).

On February 1, 2013, Plaintiff was transferred to Richard J. Donovan Correctional Facility ("RJD"). Plaintiff Depo. at 12; ECF No. 61-5 at 18 (DEF/RFP 680). A Dental Progress Notes form dated February 7, 2013 and signed by V. Sanchez, registered dental assistant, indicates that Plaintiff was a "new arrival" to RJD, and that a review of his medical history shows a current DPC of 2, and his last comprehensive exam was May 8, 2012. ECF No. 61-5 at 18 (DEF/RFP 680).

On February 11, 2013, Plaintiff appeared before Dr. Sabati for a face-to-face triage intake exam. Sabati Decl. ¶ 12; Plaintiff Depo. at 16; ECF No. 61-5 at 19 (DEF/RFP 681). Before the exam, registered dental assistant Mendoza gathered available dental records, confirmed Plaintiff was the correct inmate for the triage exam, and took vital signs. Mendoza Decl. ¶ 5; ECF No. 61-5 at 19 (DEF/RFP 681). Dr. Sabati declares that she conducted a visual examination of Plaintiff's mouth, but had no time during the fifteen-minute appointment to take x-rays.[5] Sabati Decl. ¶ 13; ECF No. 61-5 at 19 (DEF/RFP 681); see also Mendoza Decl. ¶ 5 ("Then I assisted Dr. Sabati during her exam as directed, including charting the Progress Notes."). Plaintiff told Dr. Sabati that he had cavities and pain, and Dr. Sabati responded that Plaintiff would be scheduled for the fillings. Plaintiff Depo. at 16. Dr. Sabati states that full dental records were unavailable and that she could not verify Plaintiff's May 8, 2012 treatment plan. Sabati Decl. ¶ 13; ECF No. 61-5 at 19 (DEF/RFP 681). Dr. Sabati determined that Plaintiff should first be scheduled for a comprehensive dental examination, so that the new dentist could assess Plaintiff's current dental needs. Sabati Decl. ¶ 13; ECF No. 61-5 at 19 (DEF/RFP 681). That same day, Dr. Sabati submitted a Daily Dental Encounter Form that indicated the following: (1) DPC before the encounter was 2; (2) ordered a comprehensive exam to be scheduled; (3) DPC

---

[5] The visual examination is disputed by Plaintiff, who argues in an unsworn opposition that Dr. Sabati "performed no examination of Plaintiff on February 11, 2013." MSJ Oppo. at 17. Plaintiff does acknowledge in a sworn deposition and sworn declaration that he met with Dr. Sabati for an appointment and they spoke about his pain, teeth sensitivity, and unfilled cavities. Plaintiff Depo. at 16-17; MSJ Oppo. at 26 (Plaintiff Decl. ¶ 5).

after the encounter was 3; (4) Plaintiff's last comprehensive exam was May 8, 2012; (4) the UHR/eUHR was present; and (5) Plaintiff had requested further treatment.[6]  Sabati Decl. ¶ 14; ECF No. 61-5 at 20-21 (DEF/RFP 682-83).  Plaintiff states that Dr. Sabati instructed him to sign and date a Supplemental Dental Progress Notes form requesting further dental treatment and to sign and date a Form 7362, leaving the section indicating reason for request blank.[7]  MSJ Oppo. at 26 (Plaintiff Decl. ¶ 5); ECF No. 61-5 at 19 (DEF/RFP 681).  He complied and returned the forms to Dr. Sabati.  MSJ Oppo. at 26 (Plaintiff Decl. ¶ 5); ECF No. 61-5 at 19 (DEF/RFP 681).

On January 14, 2014, Plaintiff submitted a Form 7362 requesting a dental exam after receiving notification that he was eligible for an exam.  Plaintiff Depo. at 18; ECF No. 61-5 at 22 (DEF/RFP 684).  In the section on the form that asks for the reason for requesting health care services, Plaintiff wrote, "I request a dental exam.  Moreover, after initially arriving at RJD, I was seen by the dental staff here on A Facility.  However, I was never seen for a follow-up appointment.  I would like to know why??"  ECF No. 61-5 at 22 (DEF/RFP 684).  In response to the form, Dr. Nguyen conducted a face-to-face triage exam on January 27, 2014, which was typically scheduled for fifteen minutes.  Nguyen Decl. ¶12; Plaintiff Depo. at 22; ECF No. 61-5 at 23-25 (DEF/RFP 685-87).  Plaintiff told Dr. Nguyen that he had been waiting to have his teeth filled, that he was told at CMC that he had seven cavities, and that he was in pain.  Plaintiff Depo. at 22; ECF No. 61-5 at 23 (DEF/RFP 685); Nguyen Decl. ¶ 12.  Dr. Nguyen noted the existing May 8, 2012 treatment plan, but because it was over a year-and-a-half old, he wanted to perform a comprehensive dental exam.   Nguyen Decl. ¶ 12; ECF No. 61-5 at 23 (DEF/RFP 685).   There was no time to perform the comprehensive exam at the triage

---

[6] The form does not indicate what UHR/eUHR is an abbreviation for, however, Plaintiff states in his opposition that a Unit Health Record is abbreviated as UHR.  MSJ Oppo. at 18.  It appears that UHR/eUHR could indicate a Unit Health Record/electronic Unit Health Record.

[7] Plaintiff claims in a different section of his opposition that he signed and dated two Forms 7362 on February 11, 2013.  MSJ Oppo. at 6.  However, he cites to his signed declaration as support, and the declaration states that he signed and dated only one Form 7362.  Id. at 26 (Plaintiff Decl. ¶ 5).

appointment, so Dr. Nguyen submitted a Daily Dental Encounter Form that same day indicating a DPC of 2 after the encounter, and ordering a comprehensive exam to be scheduled in one week, on February 4, 2014.  Nguyen Decl. ¶ 13; ECF No. 61-5 at 24-25 (DEF/RFP 686-87).  Dr. Nguyen did not see any conditions in Plaintiff's mouth that required the cavities listed on the May 8, 2012 treatment plan to be filled immediately.  Nguyen Decl. ¶ 14.  Dr. Nguyen declares that in his opinion, older cavities do not cause additional cavities.  Id. ¶ 17.  Plaintiff signed and dated a Supplemental Dental Progress Notes form requesting further dental treatment.  MSJ Oppo. at 26 (Plaintiff Decl. ¶ 6); ECF No. 61-5 at 23 (DEF/RFP 685).  Plaintiff also states that he signed and dated a Form 7362, as instructed by Dr. Nguyen, and then returned it to Dr. Nguyen.  MSJ Oppo. at 26 (Plaintiff Decl. ¶ 6).  Plaintiff did not receive dental treatment in February.  See Plaintiff Depo. at 23.  Dr. Nguyen had no contact with Plaintiff and no knowledge that this appointment did not occur until Plaintiff filed a prison grievance form in December 2014.  Plaintiff Depo. at 23; Nguyen Decl. ¶ 15-16.

Plaintiff states that in October or November of 2014, one of his teeth broke and half of it came out.  MSJ Oppo. at 29 (Plaintiff Decl. ¶15); Plaintiff Depo. at 23; ECF No. 61-7 at 2 (DEF/RFP 624, Patient-Inmate Health Care Appeal).  This prompted Plaintiff to request and review his dental records.  MSJ Oppo. at 29 (Plaintiff Decl. ¶ 15); Plaintiff Depo. at 24.  On December 12, 2014, Plaintiff submitted a grievance form titled Patient–Inmate Health Care Appeal, complaining of a failure to provide dental treatment for his painful cavities after numerous requests.  ECF No. 61-7 at 2-4 (DEF/RFP 624-26); Plaintiff Depo. at 23.  On December 18, 2014, the prison received Plaintiff's grievance.  ECF No. 61-7 at 2 (DEF/RFP 624).

On December 30, 2014, Dr. Nguyen conducted a grievance interview with Plaintiff.  Nguyen Decl. ¶16; Plaintiff Depo. at 24; ECF No. 61-5 at 28 (DEF/RFP 693).  Dr. Nguyen conducted a comprehensive exam, and prepared a new Treatment Plan, indicating that Plaintiff had seventeen cavities with DPCs of 2 or 3.  Nguyen Decl. ¶ 16; ECF No. 61-5 at 29 (DEF/RFP 697).  Plaintiff signed and dated the Supplemental Dental Progress Notes form requesting further treatment.  ECF No. 61-5 at 28 (DEF/RFP 693).

On January 6, 2015, Plaintiff received his first two fillings, and thereafter received

14

continuous dental treatment until completion of his treatment plan on September 18, 2015. Nguyen Decl. ¶ 18; Plaintiff Depo. at 3, 25-27; ECF No. 61-5 at 37 (DEF/RFP 801). Dental records indicate Plaintiff received dental-related services during this time on January 6, 2015, January 15, 2015, January 16, 2015, February 3, 2015, February 18, 2015, February 24, 2015, March 5, 2015, March 18, 2015, April 1, 2015, April 22, 2015, May 27, 2015, July 2, 2015, August 3, 2015, August 24, 2015, September 4, 2015, September 11, 2015, and September 18, 2015. Nguyen Decl. ¶ 19; Plaintiff Depo. at 25-27.

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating that summary judgment is proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. Id. at 322-24. The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citation omitted).

A court may not weigh evidence or make credibility determinations on a motion for summary judgment; rather, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Id. at 255. If direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citing T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)).

### B.   Section 1983

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the

United States.  See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 327 (1986).  A person acting under the color of law deprives another "of a constitutional right, within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'"  Preschooler II v. Clark County Sch. Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

## IV.  DISCUSSION

### A.  Constitutional Violation

Plaintiff alleges that Defendants were deliberately indifferent to his dental needs because they "failed to fill his cavities in a timely manner, resulting in almost a four year delay in treatment being provided, resulting in severe gum disease, causing bone loss, pain and other dental abnormalities."  MSJ Oppo. at 2.  Plaintiff alleges that Defendants were aware that he was experiencing tooth decay and pain and "failed to adhere to CDCR Division of Health Care Services protocols and process [P]laintiff CDCR Form 7362 Health Care Service Request for Treatment to ensure the [P]laintiff was scheduled and ducated for an appointment for follow-up dental encounters."  Id. at 3-4.  Plaintiff concludes by alleging that Defendants failed to ensure he received treatment in a timely manner and failed to "reasonably respond" to his dental treatment needs.  Id.

Defendants argue that they "provided sound dental care and properly submitted paperwork for scheduling Plaintiff's cavity-filling appointments, which were unfortunately not made, but through no fault of Defendants."  MSJ Mem. at 7.  Defendants argue that Plaintiff cannot show that any Defendant was deliberately indifferent to his dental care.  Id.

"Prisoners can establish an Eighth Amendment violation with respect to medical care if they can prove there has been deliberate indifference to their serious medical needs."  Hunt v.

16

Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (citing Estelle, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." McGuckin, 974 F.2d at 1059-60. By demonstrating the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See id. Proof that a defendant acted with deliberate indifference is required to satisfy the subjective prong of an Eighth Amendment claim. See id. Deliberate indifference requires proof of facts sufficient to demonstrate that a prison official acted with a culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" Gibson v. Cty of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002) (quoting Farmer, 511 U.S. at 837), overruled on other grounds by Castro v. Cty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016).

Deliberate indifference to serious medical needs of prisoners "may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citing Estelle, 429 U.S. at 104-05). However, not "every claim by a prisoner that he has not received adequate medical

treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-06. The indifference to medical needs must be substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, a mere delay in medical treatment, without a showing of resulting harm, is insufficient to support a deliberate indifference violation. Wood, 900 F.2d at 1335; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). "In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect." Wood, 900 F.2d at 1334 (citation omitted).

"A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin, 974 F.2d at 1060. Facts indicating that the official "sat idly by as [the prisoner] was seriously injured despite the defendant's ability to prevent the injury" or that the official "repeatedly failed to treat an inmate properly or that a single failure was egregious strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs." Id. at 1060-61. "In sum, the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part of the defendant." Id. at 1061. Isolated incidents relative to a plaintiff's overall treatment suggests no deliberate indifference. Id. at 1060. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

Because Defendants are the moving parties, they "bear[] the initial responsibility" of identifying those portions of the record which they believe "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

18

### 1. Serious Medical Need

Defendants do not contest that this objective prong is satisfied.  See MSJ Mem.  Almost four years passed between the initial diagnosis that Plaintiff had cavities that needed to be filled and the date that the first filling was performed, and at various times during this time period, Plaintiff complained to some of the Defendants that the delay in treating his cavities caused pain, sensitivity, toothaches, headaches, and a broken tooth.[8]  Therefore, the Court assumes without deciding that this first element is satisfied.  See Hunt v. Dental Dep't, 865 F.2d at 199-200 (finding serious medical need where loss of dentures for three months caused pain, gum disease, breaking teeth).

### 2. Deliberate Indifference

Because a section 1983 violation requires an individualized examination of duties, responsibilities, and causation, the Court will address each defendant individually.  See Leer, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

#### a. Dr. Hensley

As summarized in Section II above, Defendants provided evidence establishing that Dr. Hensley performed comprehensive dental exams on Plaintiff on two occasions, ordered appropriate follow-up care with appropriate time frames, and did not demonstrate deliberate indifference to Plaintiff's dental needs.  See Hensley Decl. ¶¶ 12-18.  As such, the burden of proof switches to Plaintiff to provide evidence establishing a triable issue of fact as to Dr.

---

[8] Plaintiff did not complain of pain from untreated cavities to Dr. Hensley, Dr. Malek, Hipp, Behrens (now McIntire), or Mendoza.  The first time that Plaintiff mentions pain is when he filled out a Form 7362 in October 2012.  Plaintiff Depo. at 12.  However there is no evidence that this form was received by any of the Defendants.  Id. at 13-15.  On February 11, 2013, Plaintiff told Dr. Sabati about his cavities, toothaches, and headaches.  Id. at 16.  On January 27, 2014, Plaintiff told Dr. Nguyen about his cavities and pain.  Id. at 22.  On December 18, 2014, the prison received Plaintiff's prison grievance about his cavities, pain, occasional inability to eat, tooth falling out, infection, and inflammation.  Id. at 23-24; ECF No. 61-7 (Patient-Inmate Health Care Appeal).

Hensley's liability. <u>Celotex</u>, 477 U.S. at 323. Plaintiff does not disagree with the vast majority of the facts presented by Dr. Hensley, but claims that Dr. Hensley was deliberately indifferent to Plaintiff's serious dental needs because 1) he failed to submit the required paperwork to ensure that Plaintiff received timely treatment and 2) failed to perform his "case management" responsibilities, which included monitoring Plaintiff's care and ensuring that Plaintiff received all ordered treatment in a timely manner. MSJ Oppo. at 14, 16. Plaintiff relies on CDCR policies and procedures to support his claim. See <u>id.</u> at 31-50.

Plaintiff's first argument is that Dr. Hensley failed to submit the correct paperwork after both the April 29, 2011 and May 8, 2012 examinations, which resulted in Plaintiff not receiving the follow-up treatments (fillings) that Dr. Hensley ordered. <u>Id.</u> at 10-16. Plaintiff argues that a CDCR Form 7362 is the only form that may be used to schedule follow-up appointments, that Dr. Hensley did not submit this form, and that the Daily Dental Encounter Form submitted by Dr. Hensley may only be used for recording inmate dental encounters and monitoring access to care, not to request follow-up appointments. <u>Id.</u>; <u>see also</u> <u>id.</u> at 27 (Plaintiff Decl. ¶ 7) ("It has been my experience that the only method an inmate-patient can be scheduled to have dental services is either by submitting a CDCR Form 7362 Health Care Services Request Form [for] a Dental Examination after receiving notification through the institutional mail of eligibility, or by submitting a 7362 after completion of dental services during an encounter by a dentist.").

First, Plaintiff provides no evidence that Dr. Hensley failed to submit the Form 7362s. Plaintiff signed and dated a blank Form 7362 on April 29, 2011, which he provided to Dr. Hensley, and this form was completed on February 23, 2012 when Plaintiff received the deep cleaning/scaling treatment. MSJ Oppo. at 25 (Plaintiff Decl. ¶ 2); ECF No. 61-5 at 8. Plaintiff signed and dated another blank Form 7362 during the May 8, 2012 appointment, which again was given to Dr. Hensley. MSJ Oppo. at 26 (Plaintiff Decl. ¶ 4). While Dr. Hensley does not state in his declaration what he did with the Form 7362s, Plaintiff does not provide evidence that the forms were not properly submitted. Plaintiff argues that Dr. Hensley must not have submitted the Form 7362s because he did not receive the ordered fillings, but this is merely speculation, not fact.

Dr. Hensley explains in his declaration that he filled out and submitted a Daily Dental Encounter Form for processing and scheduling after each appointment. Hensley Decl. ¶¶ 6, 7, 14, 17. Plaintiff does not present evidence contradicting this claim, but he argues that a Daily Dental Encounter Form cannot be used to schedule a new dental appointment and he relies on the Dental Services Manual to support his claim. MSJ Oppo. at 10-16. Plaintiff's evidence does not support his claim.

Dental Services Manual, Chapter 5.3 Recording and Scheduling Dental Encounters states that "[a] dental staff member shall record inmate-patient requests for dental treatment (via a CDCR Form 7362 *or otherwise*) in the [Interim Dental Tracking Database ("IDTD")] as a new 'open record.'" MSJ Oppo. at 40 (emphasis added). The inclusion of the phrase "or otherwise" indicates that scheduling may be arranged without a Form 7362. Similarly, in the section discussing the Form 7362, the Manual provides that "[i]f an inmate-patient wishes to request another dental encounter, then he or she shall complete and submit another CDCR Form 7362 at the end of the dental encounter" and "[t]he dentist shall initial and date the CDCR Form 7362 *and* the dentist, or designee, shall notify the OT, or designated dental staff, to schedule the inmate-patient for treatment at the next available encounter relative to the inmate-patient's DPC." MSJ Oppo. at 41 (emphasis added). Importantly, it does not state that only a Form 7362 will initiate the scheduling. Finally, the Dental Services Manual chapter on Recording and Scheduling Dental Encounters states that "[t]he Interim Dental Tracking Database (IDTD) is used for recording inmate-patient requests for dental encounters and to schedule encounters" and "[i]nformation on the Daily Dental Encounter Form (DDEF) is entered into the IDTD for the purpose of recording inmate-patient dental encounters and monitoring access to care." MSJ Oppo. at 63 (Dental Servs. Manual, Chapter 5.3). Again, it does not state that dental encounters ordered by a dentist cannot be scheduled from the information submitted on the Daily Dental Encounter Form. Moreover, the evidence establishes that the Daily Dental Encounter Form submitted by Dr. Hensley after the April 29, 2011 examination was successfully utilized to schedule Plaintiff's next appointment for dental scaling. Hensley Decl. ¶14; ECF No. 61-5 at 5-6.

Accordingly, Plaintiff has not provided evidence creating a triable issue of fact that Dr. Hensley was deliberately indifferent to Plaintiff's dental needs because he failed to submit the Form 7362 or used the Daily Dental Encounter Form (rather than the Form 7362) to order Plaintiff's follow-up dental care. Even if Dr. Hensley did use the wrong form, Plaintiff has not presented any evidence establishing that Dr. Hensley knew that submitting a Daily Dental Encounter Form would prevent Plaintiff's appointment from being scheduled. See Gibson, 290 F.3d at 1187-88 ("Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person 'knows of and disregards an excessive risk to inmate health and safety.'" (quoting Farmer, 511 U.S. at 837)); McGuckin, 974 F.2d at 1060 ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."). And, Dr. Hensley clearly disproves such an allegation by declaring that (1) he had no access to the appointment-setting computer program, and that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling; (2) he submitted a Daily Dental Encounter Form after Plaintiff's April 29, 2011 appointment; and (3) he expected the appointments would be scheduled as noted. Hensley Decl. ¶¶ 6, 7, 14, 19.

Plaintiff's second argument is that Dr. Hensley demonstrated deliberate indifference to Plaintiff's serious dental needs because he failed to ensure that Plaintiff received the ordered treatment (cavities filled) in a timely manner and therefore violated his duty of case management. MSJ Oppo. at 14-16. The Dental Services Manual, Chapter 5.9 Continuity of Care, does state that a treating dentist is charged with monitoring timely scheduling of appointments and rescheduling of canceled or failed appointments. Id. at 46. However, it does not specify how this is to be done, nor does it expressly require that the treating dentist personally check and monitor each inmate's medical records against the schedule. Id. Even if Dr. Hensley did violate a duty of care established by the Dental Services Manual, Plaintiff has not provided, and the Court has not found, case law supporting the argument that the mere violation of that duty of care establishes a constitutional violation. Rather, the Ninth Circuit and

districts courts within the Ninth Circuit repeatedly have held that the violation of CDCR regulations do not establish a constitutional violation.  See Peralta v. Dillard, 744 F.3d 1076, 1087 (9th Cir. 2014) (en banc) (finding that an official's failure to follow prison procedures is not, by itself, enough to establish a violation of an inmate's constitutional rights, and that instead the inmate "must prove both (1) that the failure to follow procedure put inmates at risk and (2) that [the official] *actually knew* that his actions put inmates at risk"); Patten v. Stone, No. C11-2057 LHK (PR), 2014 WL 878836, at *6 (N.D. Cal. March 3, 2014) ("[T]hat prison officials violate their own procedures does not automatically equate to a finding that they also violated the federal constitution.  The question here is whether there is a genuine issue of material fact that [the dentist's] failure to act delayed plaintiff's treatment, and whether that failure to act was deliberately indifferent.").[9]  Here, Plaintiff presents no other evidence to establish a constitutional violation.

Finally, even interpreting the evidence in the light most favorable to Plaintiff, the evidence does not support a conclusion that Dr. Hensley acted with a culpable state of mind by knowing of and disregarding an excessive risk of harm to Plaintiff, which then caused serious harm to Plaintiff.  On April 29, 2011, Dr. Hensley performed a comprehensive annual examination on Plaintiff, determined that he needed deep cleaning/scaling and two cavities filled, and submitted paperwork directing that the deep cleaning/scaling occur first and that both treatments occur within one year.  Hensley Decl. ¶¶ 12-14.  The deep cleaning/scaling was performed by another dental professional on February 23, 2012.  Plaintiff Depo. at 8-9; Hipp Decl. ¶ 6.  Dr. Hensley did not have any other interaction with Plaintiff until May 8, 2012, and he was unaware that Plaintiff's cavities had not been filled.  Hensley Decl. ¶¶ 14-16, 19.

_____

[9] See also Putney v. Fox, No. 2:17-CV-1507 DB P, 2017 WL 4075789, at *5 (E.D. Cal. Sept. 14, 2017) ("A violation of a prison regulation, which is not itself challenged as unconstitutional, does not provide a basis for liability.  Thus, any claims based on the mere violation of a regulation are not actionable." (citing Sandin v. Conner, 515 U.S. 472, 481–82 (a "prison regulation [is] primarily designed to guide correctional officials in the administration of a prison" and is "not designed to confer rights on inmates"))); Hamilton v. Steeb, No. CV 17-5300 ODW (SS), 2017 WL 3498624, at *5 (C.D. Cal. Aug. 15, 2017) ("The mere violation of state prison protocols is not actionable under § 1983.").

On May 8, 2012, Plaintiff was on Dr. Hensley's calendar for a comprehensive dental examination. Hensley Decl. ¶ 15. Plaintiff told Dr. Hensley that his cavities had not been filled as required. Id.; Plaintiff Depo. at 11. Dr. Hensley did not have time to fill the cavities so he conducted the scheduled comprehensive dental examination. Hensley Decl. ¶ 15. At the conclusion of the examination, Dr. Hensley prepared a new treatment plan, ordered that all of the cavities (including the new ones) be filled within four months, and directed that the most serious cavities be treated first. Id. ¶¶ 15-18. Plaintiff's cavities were not filled within four months. Plaintiff testified that in October 2012 he prepared and submitted two Form 7362s indicating that he was experiencing dental pain and requesting treatment, but he did not receive follow-up treatment. Plaintiff Depo. at 12-14; MSJ Oppo. at 27 (Plaintiff Decl. ¶ 8). Plaintiff presents no evidence supporting a conclusion that Dr. Hensley learned of these complaints. Plaintiff Depo. at 12-15 (testimony explaining that he saw correctional officers pick up his complaints, but did not know what happened to them, and testimony acknowledging that he chose not to file a grievance, although he knew he could do so). Plaintiff also presents no evidence indicating that Dr. Hensley knew that Plaintiff was experiencing pain as Plaintiff did not file a grievance and did not so indicate on the Form 7362 which resulted in the May 2012 appointment. See ECF No. 61-5 at 7 (Plaintiff merely stated "I want a dental exam" and did not mention any pain or unfilled cavities).

As such, there is no genuine issue of material fact regarding whether Dr. Hensley acted with deliberate indifference towards Plaintiff. Dr. Hensley examined Plaintiff and ordered appropriate care. There is no evidence that Dr. Hensley failed to submit the Form 7362 signed by Plaintiff. The Daily Dental Encounter Form was an acceptable form to use to schedule follow-up dental care and Dr. Hensley followed all procedures required for ordering follow-up care. Although Plaintiff did not have his two cavities filled within one year, he did receive a deep cleaning and when Plaintiff informed Dr. Hensley of the failure, Dr. Hensley conducted a second comprehensive exam, increased the DPC code, and ordered all of the cavities to be filled within four months. While this did not occur, there is no evidence indicating that Dr. Hensley knew that Plaintiff was not treated as he ordered. Moreover, there is no evidence that Plaintiff told

Dr. Hensley that Plaintiff was experiencing pain. Without this knowledge of lack of treatment and pain, there is no evidence that Dr. Hensley had the requisite subjective knowledge and intent of deliberate indifference. See Farmer, 511 U.S. at 844 ("[P]rison officials who lacked knowledge of a risk cannot be said to have inflicted punishment . . . ."). Even if Dr. Hensley failed in his duty to monitor Plaintiff's appointments, there is no evidence that Dr. Hensley knew that by doing so, he would expose Plaintiff to an excessive risk of harm. See Lucio v. Smith, No. C 08-0631 WHA PR, 2011 WL 5508920, at *7 (E.D. Cal. Nov. 9, 2011) ("The Eighth Amendment analysis in a delayed response case requires a plaintiff to raise a triable issue of fact that a delay occurred to an inmate with a problem so severe that a delay would cause significant harm and that the defendant knew this to be the case."). Dr. Hensley's duty cannot be found to extend past the time when Plaintiff was transferred to RJD on February 1, 2013, and into the care of new dentists. See McGuckin, 974 F.2d at 1061-62 (finding two doctors were not responsible for a prisoner's delayed treatment during a time when they had "no contact with nor medical responsibility for" the prisoner; nor were they responsible for the delay that occurred after they recommended a treatment). Therefore, this Court **RECOMMENDS** that Defendants' motion for summary judgment as to Dr. Hensley be **GRANTED.**

### b. Dr. Malek

Plaintiff claims that Dr. Malek was deliberately indifferent to Plaintiff's serious medical needs when (1) she saw Plaintiff on February 23, 2012 for his dental scaling appointment and then assigned a DPC of 3, with no examination performed, which improperly extended the timeframe for completion of his remaining cavities; and (2) by failing to ensure the Form 7362 signed by Plaintiff was submitted for scheduling of his follow-up treatment. MSJ Oppo. at 15. As set forth in Section II, Dr. Malek's only interaction with Plaintiff was on February 23, 2012 when she met with Plaintiff to explain the dental scaling procedure, obtain his consent, and collect the signed paperwork. See Malek Decl. ¶ 12; MSJ Oppo. at 25 (Plaintiff Decl. ¶ 3). Plaintiff's evidence establishes that Dr. Malek met with Plaintiff, explained that dental hygienist Hipp would clean Plaintiff's teeth, advised him that he would be scheduled for fillings in the near future, and instructed Plaintiff to complete several forms which Dr. Malek kept. Plaintiff Depo.

at 8-10; MSJ Oppo. at 25 (Plaintiff Decl. ¶ 3).  Plaintiff does not present any evidence that Dr. Malek knew that he did not receive the ordered fillings or that Plaintiff was experiencing dental pain that required urgent treatment.  There also is no evidence that Dr. Malek did not submit the required forms or that the continued use of the DPC 3 caused Plaintiff to not receive timely fillings.

As discussed in Section IV.A.2.a., a Daily Dental Encounter Form is an acceptable form to use to schedule future appointments and there is no evidence to support a finding that Dr. Malek used the form knowing that it would prevent or delay Plaintiff's dental treatment.  In fact, Dr. Malek stated that she had no reason to believe that Plaintiff would not be timely scheduled for his fillings.  Malek Decl. ¶ 13; see Farmer, 511 U.S. at 837-38 (finding that "an act or omission unaccompanied by knowledge of a significant risk of harm" is not sufficient to constitute a violation of the Eighth Amendment).  In addition, there is no evidence that Dr. Malek was Plaintiff's treating dentist under the Dental Services Manual for purposes of ensuring the timely cavity fillings ordered by Dr. Hensley or, as discussed supra, that the violation of such a duty results in a constitutional violation.  This was Dr. Malek's only dental interaction with Plaintiff and there is no evidence supporting a finding that she was deliberately indifferent to Plaintiff's serious dental needs.  See McGuckin, 974 F.2d at 1060 (finding isolated incidents relative to a plaintiff's overall treatment suggests no deliberate indifference).  Therefore, the Court **RECOMMENDS** that Defendants' motion for summary judgment as to Dr. Malek be **GRANTED.**

### c. Dr. Sabati

Plaintiff claims that Dr. Sabati was deliberately indifferent to his serious medical needs when she failed to ensure that he was timely scheduled for a follow-up appointment to fill his seven cavities after his triage intake exam on February 11, 2013.  MSJ Oppo. at 17; FAC ¶ 13. Plaintiff also claims that Dr. Sabati was deliberately indifferent to his serious medical needs when she issued a DPC of 3 after the encounter despite being aware of his previous DPC of 2 and his untreated cavities and pain.  MSJ Oppo. at 17.  Plaintiff further claims that Dr. Sabati failed her duty as a treating dentist to monitor the timely scheduling of his follow-up appointment and the rescheduling of canceled or failed appointments.  Id.

First, to the extent Plaintiff is arguing that Dr. Sabati was deliberately indifferent to his serious dental needs because she failed to submit the Form 7362 signed by Plaintiff or improperly used the Daily Dental Encounter Form, Plaintiff presents no evidence to support these arguments. As with the other dentists, Plaintiff presents no evidence to support his claim that Dr. Sabati did not submit the Form 7362. Furthermore, as discussed <u>supra</u> IV.A.2.a., there is no evidence that using a Daily Dental Encounter Form or Supplemental Dental Progress Notes form to schedule future treatment is improper or that Dr. Sabati used the forms knowing that they would harm Plaintiff by delaying his treatment and causing him pain.

However, the Court finds that there is a triable question of material fact as to whether Dr. Sabati was deliberately indifferent to Plaintiff's serious medical needs when she assigned a DPC of 3 after the triage appointment, knowing that Plaintiff was experiencing dental pain, had numerous untreated cavities, and had a DPC of 2 prior to the appointment. When Plaintiff saw Dr. Sabati on February 11, 2013, he told her that he had cavities and pain. Plaintiff Depo. at 16. This is undisputed. Although Dr. Sabati claims that "full dental records were not available" during the fifteen-minute appointment, Dr. Sabati was aware that (1) Plaintiff had cavities and was in pain, (2) there was a Treatment Plan for Plaintiff's cavities dated May 8, 2012, and (3) Plaintiff came to her with a DPC of 2, indicating a need for treatment within four months of May 2012. ECF No. 61-5 at 20 (DEF/RFP 682). Dr. Sabati also confirmed that Plaintiff's Unit Health Record was present during the encounter. <u>Id.</u> Dr. Sabati said there was no time to confirm the Treatment Plan with an x-ray, but that she conducted a visual exam. Sabati Decl. ¶ 13. Although Plaintiff disputes this in his opposition brief by claiming that Dr. Sabati "performed no examination of Plaintiff on February 11, 2013," [MSJ Oppo. at 17] there is no such evidence in a verified complaint, declaration or deposition in the record before the Court. Therefore, Plaintiff's denial of the examination is not a material fact. <u>See</u> <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (finding the statements in a motion sworn to be "true and correct" and based on personal knowledge suffices to make the motion a verified motion); <u>Keenan v. Hall</u>, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) ("A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and

sets forth specific facts admissible in evidence.") (internal quotation marks and citation omitted); Schroeder v. McDonald, 55 F.3d 453, 460 n.10 (9th Cir. 1995) (finding a pleading is "verified" when the plaintiff states that the facts in the complaint are true under the pains and penalties of perjury). Dr. Sabati completed a Daily Dental Encounter Form that ordered a comprehensive exam, but assigned a DPC of 3, indicating a one-year timeframe for completion. ECF No. 61-5 at 21 (DEF/RFP 683). Viewed in the light most favorable to Plaintiff, the facts indicate that despite knowing that (1) Plaintiff was in pain, (2) had an unambiguous diagnosis of cavities, and (3) had a Treatment Plan dated nine months prior that included a DPC of 2 (requiring the cavities to be filled with four months), Dr. Sabati visually examined Plaintiff's mouth and ordered a comprehensive exam with a DPC of 3, effectively lowering Plaintiff's priority code for scheduling and necessarily increasing the delay of treatment. Dr. Sabati, as a dentist, could have kept the DPC at 2 or even moved it up to DPC 1, indicating urgency. See MSJ Oppo. at 42-43 (Dental Serv. Manual, Chapter 5.4).

As discussed above, the violation of the CDCR duty to monitor appointments does not automatically create a constitutional violation. However, when a violation of that duty is combined with a decision to take actions that significantly delay treatment, knowing that the prisoner is in pain, a trier of fact could find deliberate indifference. See Hunt v. Dental Dep't, 865 F.2d at 200 (finding delay in providing a prisoner with dental treatment combined with knowledge of his pain, bleeding gums, and breaking teeth was sufficient to state a claim of deliberate indifference). Dr. Sabati was aware that Plaintiff was in pain, and yet she choose to lower his DPC from a 2 to a 3, understanding that this would add to the delay in treatment and force Plaintiff to endure additional months of unnecessary pain.[10] Dr. Sabati also chose not to order fillings for any of Plaintiff's cavities. This decision also extended the delay in treatment and months of pain because the fillings could not be scheduled until after the exam was completed.

---

[10] Dr. Sabati asserts that "if [her] visual examination had indicated a need for a DPC of 1 or 2, [she] would have assigned such a code." Sabati Decl. ¶ 13. While a trier of fact may credit this statement, there is a triable issue of material fact regarding Dr. Sabati's conduct.

Dr. Sabati's deliberate decision to change the treatment plan from filling cavities to comprehensive exam, and to lower Plaintiff's DPC from 2 to 3 when she knew that Plaintiff was experiencing pain, had an unambiguous diagnosis of cavities, and a nine-month-old uncompleted treatment plan that had required the cavities to be filled within four months, combined with a duty to at least not further delay treatment unnecessarily, creates a genuine issue of material fact that defeats summary judgment. See Estelle, 429 U.S. at 104 (finding that a "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain"); Hutchinson, 838 F.2d at 394 (finding deliberate indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care" (citing Estelle, 429 U.S. at 104-05)). Accordingly, this Court **RECOMMENDS** that Defendants' motion for summary judgment as to Dr. Sabati be **DENIED**.

### d. Dr. Nguyen

Plaintiff claims that Dr. Nguyen was deliberately indifferent to his serious medical needs when he failed to submit the Form 7362 signed by Plaintiff so that Plaintiff could be placed into the scheduling system and ducated for an appointment, even though he was aware of his diagnosed, but yet untreated, cavities and Plaintiff's significant pain. MSJ Oppo. at 18; FAC ¶ 14. Plaintiff further claims that Dr. Nguyen was charged with a duty of "case management" to monitor the timely scheduling of appointments and the rescheduling of canceled or failed appointments. MSJ Oppo. at 18.

Plaintiff submitted a Form 7362 on January 14, 2014. Plaintiff Depo. at 18, 22. On the form, he requested a dental exam, but he did not state that he was in pain or that he had untreated cavities. ECF No. 61-5 at No. 22 (DEF/RFP 684) (Plaintiff wrote, "I request a dental exam. Moreover, after initially arriving at RJD, I was seen by the dental staff here on A Facility. However, I was never seen for a follow-up appointment. I would like to know why??"). In response to this form, Dr. Nguyen conducted a triage appointment on January 27, 2014. Nguyen Decl. ¶ 12. Plaintiff then told Dr. Nguyen about his untreated cavities and his pain. Plaintiff Depo. at 22. Dr. Nguyen noted the overdue Treatment Plan from May 8, 2012, but he did not

see any conditions in Plaintiff's mouth that required the cavities to be filled immediately. Nguyen Decl. ¶ 14. Dr. Nguyen also wanted Plaintiff to have a comprehensive exam to see if there were new cavities, but he did not have time during this triage appointment to do so. Id. ¶ 12. Dr. Nguyen submitted a Daily Dental Encounter Form that indicated a DPC of 2 and ordered a comprehensive exam to be scheduled one week later on February 4, 2014. Id. ¶ 13; ECF No. 61-5 at 25 (DEF/RFP 687). Dr. Nguyen had no contact with Plaintiff and no knowledge that that this appointment did not occur until Plaintiff filed a prison grievance form in December 2014 and Dr. Nguyen conducted a grievance interview with him on December 30, 2014. Plaintiff Depo. at 23; Nguyen Decl. ¶ 15-16. Dr. Nguyen performed a comprehensive dental exam and prepared a new Treatment Plan, and Plaintiff received his first two fillings on January 6, 2015. Id. ¶¶ 16, 18. Plaintiff received consistent treatment throughout 2015, and the last cavity was filled in September 2015. Id. ¶ 18-19; ECF No. 61-5 at 37.

First, there is no evidence that Dr. Nguyen failed to submit the Form 7362. Additionally, as discussed supra IV.A.2.a., there is no evidence that completing and submitting a Daily Dental Encounter Form to schedule a future treatment is improper or that Dr. Nguyen knew that by doing so, it would harm Plaintiff by delaying his treatment and causing pain. Here, Dr. Nguyen submitted a Daily Dental Encounter Form for processing and scheduling that indicated the next encounter should be scheduled in one week, and Dr. Nguyen believed this would occur. Nguyen Decl. ¶¶ 13, 15; ECF No. 61-5 at 25 (DEF/RFP 687).

There also is insufficient evidence to show that Dr. Nguyen failed in his duty of case management. Although Dr. Nguyen was aware of Plaintiff's pain and untreated cavities, he examined Plaintiff and determined that immediate filling was not necessary. There is no evidence that this decision was medically unacceptable or chosen with a conscious disregard for Plaintiff's dental needs. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (finding that in a matter of two alternative courses of medically acceptable courses of treatment, deliberate indifference requires a showing that the one chosen was medically unacceptable under the circumstances and that it was chosen "in conscious disregard of an excessive risk to plaintiff's health"). In fact, Dr. Nguyen displayed a conscious *regard* for Plaintiff's dental needs as he

increased the DPC code from 3 to 2 and ordered a comprehensive exam to be scheduled in one week. Nguyen Decl. ¶¶ 12-13; ECF No. 61-5 at 25. Dr. Nguyen states that he believed this exam would occur. Nguyen Decl. ¶ 15. Plaintiff does not provide any evidence indicating that Dr. Nguyen knew that Plaintiff had not received the ordered dental care, that Plaintiff's cavities had not been filled, or that Plaintiff continued to experience dental pain. See Farmer, 511 U.S. at 837-38 (finding that "an act or omission unaccompanied by knowledge of a significant risk of harm" is not sufficient to constitute a violation of the Eighth Amendment). In fact, once Plaintiff filed his grievance alerting Dr. Nguyen to the lack of treatment, Dr. Nguyen conducted a comprehensive examination, prepared a new Treatment Plan, and Plaintiff's treatment began within a week. Nguyen Decl. ¶¶ 16, 18.

Accordingly, even if Dr. Nguyen violated a duty to monitor Plaintiff's care, and interpreting the facts in the light most favorable to Plaintiff, Plaintiff has not provided facts creating a triable issue of fact as to whether Dr. Nguyen acted with deliberate indifference to Plaintiff's serious dental needs. See Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) ("Before it can be said that a prisoner's civil rights have been abridged, however, the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." (citing Estelle, 429 U.S. at 105-06)); Patten v. Stone, 2014 WL 878836, at *6 ("[T]hat prison officials violate their own procedures does not automatically equate to a finding that they also violated the federal constitution. The question here is whether there is a genuine issue of material fact that [the dentist's] failure to act delayed plaintiff's treatment, and whether that failure to act was deliberately indifferent."). Therefore, this Court **RECOMMENDS** that Defendants' motion for summary judgment as to Dr. Nguyen be **GRANTED**.

### e. N. Hipp, K. Behrens (now McIntire), and E. Mendoza

Plaintiff claims that dental hygienist Hipp was deliberately indifferent to Plaintiff's serious medical needs (1) when Hipp filled out a Daily Dental Encounter Form after she scaled his teeth on February 23, 2012 that indicated Plaintiff needed two fillings on his next visit and recorded a DPC of 3, which improperly extended the timeframe for completion, and (2) by failing to ensure

15cv1871-LAB (BLM)

the Form 7362 signed by Plaintiff on February 23, 2012 was submitted for scheduling of his follow-up treatment.  MSJ Oppo. at 15.

Plaintiff claims that dental assistant Behrens (now McIntire) was deliberately indifferent to his serious medical needs when she failed to submit the Form 7362 signed by Plaintiff on May 8, 2012 so that Plaintiff could be placed into the scheduling system and ducated for an appointment within four months, even though she was aware of his diagnosed, but yet untreated, cavities.  MSJ Oppo. at 16.

Plaintiff claims that dental assistant Mendoza was deliberately indifferent to his serious medical needs when she assisted Dr. Sabati during Plaintiff's triage intake exam on February 11, 2013 and failed "to ensure effective and adequate dental treatment to Plaintiff in a timely manner," despite learning that day of Plaintiff's untreated cavities and pain.  FAC ¶ 13.

Defendant Hipp argues she is entitled to summary judgment because she cleaned Plaintiff's teeth within the Treatment Plan timeframe and submitted paperwork for Plaintiff to be scheduled for fillings, and was therefore not deliberately indifferent to Plaintiff's dental needs. MSJ Mem. at 23-24.  Defendants Behrens (now McIntire) and Mendoza argue that they are entitled to summary judgment because their only involvement with Plaintiff's dental care was to assist the dentists during Plaintiff's appointments, and that they were not deliberately indifferent to Plaintiff's dental needs.  MSJ Mem. at 25-28.

The undisputed facts establish that only dentists, and not dental hygienists nor dental assistants, are authorized to prepare treatment plans and assign DPC codes.  See Hensley Decl. ¶ 5; Malek Decl. ¶ 5; Sabati Decl. ¶ 5; Nguyen Decl. ¶ 5; see also MSJ Oppo. at 42 (Dental Servs. Manual, Chapter 5.4).  Furthermore, dental hygienists, registered dental assistants, and dentists did not have access to the appointment-setting computer program and could not set appointments during the relevant time period for Plaintiff's cause of action.  Hensley Decl. ¶ 7; Malek Decl. ¶ 7; Sabati Decl. ¶ 7; Nguyen Decl. ¶ 7; Hipp Decl. ¶ 3; Behrens/McIntire Decl. ¶ 2; Mendoza Decl. ¶ 2.  Hipp, Behrens (now McIntire), and Mendoza declared under penalty of perjury that the appointment-setting function was performed by others based upon submittal of the Daily Dental Encounter Form for processing and scheduling.  Hipp Decl. ¶ 3;

Behrens/McIntire Decl. ¶ 2; Mendoza Decl. ¶ 2. Finally, the prison regulations do not impose a duty of case management on dental hygienists or assistants. MSJ Oppo. at 46 (Dental Servs. Manual Chapter 5.9).

As he did with regard to each dentist, Plaintiff argues that these three individuals failed to submit a Form 7362, but he provides no evidence to support this claim. Moreover, as discussed above, there is no merit to Plaintiff's claim that the Daily Dental Encounter Form is an improper form to use, and Plaintiff provides no evidence indicating that these three individuals used that form knowing that it would prevent or delay Plaintiff's treatment.

The evidence establishes that each of these defendants properly performed discrete tasks with no evidence of deliberate indifference. Hipp cleaned Plaintiff's teeth by dental scaling, and then completed progress notes indicating that on Plaintiff's next visit, he needed two fillings and noted the DPC of 3 that had been assigned by the treating dentist (Dr. Hensley). Plaintiff Depo. at 8, 10; Hipp Decl. ¶ 6; ECF No. 61-5 at 10 (DEF/RFP 670); MSJ Oppo. at 25 (Plaintiff Decl. ¶ 3). Hipp also prepared and submitted a Daily Dental Encounter Form noting the same information. Hipp Decl. ¶ 6; ECF No. 61-5 at 11-12 (DEF/RFP 671-72). Behrens (now McIntire) and Mendoza each assisted the respective treating dentists during Plaintiff's appointments by performing tasks such as gathering Plaintiff's dental records, confirming Plaintiff was the correct inmate for the appointment, and taking vital signs. Behrens/McIntire Decl. ¶ 5; ECF No. 61-5 at 13 (DEF/RFP 674); Mendoza Decl. ¶ 5; ECF No. 61-5 at 19 (DEF/RFP 681).

There is no evidence that Hipp acted with deliberate indifference when she noted the DPC of 3 for Plaintiff's fillings because it was not within her authority to change the existing DPC. See Farmer, 511 U.S. at 837-38 (finding that "an act or omission unaccompanied by knowledge of a significant risk of harm" is not sufficient to constitute a violation of the Eighth Amendment). Instead, the facts show that each individual provided care to the extent that she was authorized to do so. There is no evidence that any of these individuals acted in a way that she knew would cause Plaintiff pain or delay his treatment. See id. at 837 (finding that deliberate indifference requires an official to subjectively "know[] of and disregard[] an excessive risk to inmate health or safety"); McGuckin, 974 F.2d at 1062 (finding no genuine issue of material fact regarding

33

whether two doctors were responsible for a painful delay in an inmate's treatment because there was no evidence that either doctor was responsible for scheduling the treatment or hindered its performance).

Plaintiff has not provided any evidence to support his argument that these individuals acted with deliberate indifference to his serious medical needs. As dental hygienists and assistants, they do not have the authority to create treatment plans or change DPC codes. Therefore, this Court **RECOMMENDS** that Defendants' motion for summary judgment as to Defendants Hipp, Behrens (now McIntire), and Mendoza be **GRANTED**.

### f. Tooth Powder

Plaintiff claims that Defendants' failure to provide him, an indigent inmate, with toothpowder that contains appropriate levels of fluoride was deliberately indifferent to his medical needs because it failed to protect his teeth from tooth decay. FAC ¶ 42.

Plaintiff presents no evidence that his cavities were caused or failed to be protected by the toothpowder. See Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.") Furthermore, Defendants claim, and Plaintiff does not refute, that they did not provide Plaintiff with the toothpowder that he used; it was provided by the custody-branch. Hensley Decl. ¶ 10; Malek Decl. ¶ 10; Sabati Decl. ¶ 10; Nguyen Decl. ¶ 10; Hipp Decl. ¶ 5; Behrens/McIntire Decl. ¶ 4; Mendoza Decl. ¶ 4; see also MSJ Mem. at 9. Furthermore, Plaintiff does not present any evidence indicating that any Defendants acted with deliberate indifference with regard to the toothpowder provided to Plaintiff. Accordingly, this Court **RECOMMENDS** that Defendants' motion for summary judgment on this claim be **GRANTED**.

### B. Qualified Immunity

Defendants argue that Defendants are protected by qualified immunity. MSJ Mem. at 30. The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982). The court must consider the following two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and (2) whether the right was clearly established such that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 201–02, (2001) (internal quotations and citation omitted), receded from by Pearson v. Callahan, 555 U.S. 223, 236 (2009) (overruling the sequence of the Saucier two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier).

The Court finds a genuine issue of material fact on deliberate indifference only as to Dr. Sabati, and therefore declines to analyze qualified immunity for the other Defendants.

Dr. Sabati is not entitled to qualified immunity at this stage because the evidence establishes a genuine issue of material fact as to whether she was deliberately indifferent to Plaintiff's dental needs, and therefore, qualified immunity is not available to her. See Groce v. Dep't of Corr., 203 F.3d 831 (9th Cir. 1999) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law. In order to determine whether summary judgment was properly denied, we need only determine whether the plaintiff established a genuine issue of material fact as to whether the defendant prison officials were deliberately indifferent to his medical needs.").

## V. <u>CONCLUSION AND RECOMMENDATION</u>

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; and (2) granting in part and denying in part Defendants' motion for summary judgment.

///

15cv1871-LAB (BLM)

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than** <u>**January 12, 2018**</u>. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than** <u>**February 9, 2018**</u>. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: 12/15/2017

Hon. Barbara L. Major
United States Magistrate Judge

15cv1871-LAB (BLM)