# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY ROBERTS,<br><br>　　　　　　　　　Plaintiff,<br><br>vs.<br><br>S. HENSLEY, et al.,<br><br>　　　　　　　　　Defendants. | CASE NO. 15cv1871-LAB (BLM)<br><br>**ORDER GRANTING MOTION TO RE-TAX COSTS [Dkt. 143];**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR REIMBURSEMENT OF EXPENSES [Dkt. 140]** |

Presently before the Court are two costs motions related to the March 2019 trial in this case. The first is Plaintiff Tony Roberts' motion to re-tax $2,616.20 in costs the Clerk awarded to Defendant N. Sabati as the prevailing party. The second is a motion by Mr. Roberts' pro bono counsel to recover expenses incurred in trying the case. For the reasons below, Mr. Roberts' Motion to Re-Tax Costs is **GRANTED** and Mr. Roberts' Motion for Reimbursement of Expenses is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Mr. Roberts, a state inmate, brought this suit in 2015, alleging that a series of prison dentists were deliberately indifferent to his medical needs. This deliberate indifference, Roberts claimed, led to him developing a series of severe cavities and other dental ailments. By the time of trial, only one defendant remained, Dr. N. Sabati. Mr. Roberts, who had to that point represented himself pro se, petitioned the Court for

- 1 -

appointment of counsel. The Court granted that motion and appointed Amber Lee Eck as his trial counsel. Dkts. 86, 87. The case went to trial on March 19, 2019, and the jury returned a unanimous verdict in Dr. Sabati's favor on March 21, 2019. The Court entered judgment that same day.

As the prevailing party, Dr. Sabati moved for costs in the amount of $3,086.20. Dkt. 138. The Clerk held a hearing and granted that motion in part, taxing costs against Mr. Roberts in the amount of $2,616.20. Dkt. 142. At the same time, Mr. Roberts' counsel moved to recover expenses incurred in trying the case, which is permitted in some situations under the Court's pro bono rules. Dkt. 140. In all, Mr. Roberts' counsel seeks to recover $22,271.81 in expenses, which includes $2,737.86 for transcripts, $204.95 for demonstrative exhibits, and a total of $19,329 for witness fees paid to Mr. Roberts' dental expert, Dr. Signe Belden.

**Analysis**

**1.     Motion to Re-Tax Costs**

Mr. Roberts objects to the Clerk's decision to tax costs against him in the amount of $2,616.20. This Court has jurisdiction to review the Clerk's action. Fed. R. Civ. P. 54(d); L.R. 54.1(h). While there is a presumption in favor of awarding costs to the prevailing party, courts have discretion to deny costs as long as they specify an appropriate reason. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003). The Ninth Circuit has historically recognized three bases for denying costs to the prevailing party: (1) a losing party's limited financial resources; (2) misconduct by the prevailing party; and (3) "the chilling effect of imposing ... high costs on future civil rights litigants." *Id.* (quoting *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 592 (9th Cir. 2000)). While there's no allegation of misconduct by the prevailing party, at least the first and third bases for denying costs are implicated here.

First, Mr. Roberts is clearly indigent. He has no funds in any of his accounts and thus would be unable to pay any costs assessed to him. Indeed, a significant part of his

argument at trial was that he was unable to afford even basic toiletries like toothpaste and that the prison-provided "tooth powder" proved inadequate in preventing cavities. Dr. Sabati nonetheless argues that because any costs would be incrementally deducted from Mr. Roberts' prison trust account as a small percentage of the account balance, his ability to obtain basic necessities would not be affected. Since Mr. Roberts does not have *any* money in his account, however, it's unlikely that any portion of these costs would be repaid until he leaves prison, at which point the debt would simply serve as a hindrance to him reintegrating into society. His indigency affects him just as it would a plaintiff who is not incarcerated, and such plaintiffs are usually not held responsible for costs. *See, e.g., Flores by & through Clark v. United States*, 2017 WL 5176884, at *2 (S.D. Cal. 2017) (refusing to award costs because it would be unjust to order indigent plaintiff to pay); *see also Lowry v. City of San Diego*, 2013 WL 12209819, at *2 (S.D. Cal. 2013) (refusing to award costs because plaintiff, though not completely destitute, would be unable to support herself if ordered to pay).

Awarding costs would also have a chilling effect on future civil rights litigants. Dr. Sabati argues that the unique facts here would likely distinguish the present case from future civil rights litigation and therefore have no far-reaching effect on inmate dental care or prison life. But factual distinctions exist in every case, whether civil rights-related or not. Were the Court to find Mr. Roberts liable for costs, it would chill the willingness of other inmates who believe they received inadequate dental care from pursuing those claims. The Court can't countenance that by taxing Mr. Roberts with costs.

The Court finds that Mr. Roberts is indigent and that assessing costs would chill future civil rights litigation. His Motion to Re-Tax Costs is **GRANTED**.

**2. Motion for Reimbursement of Expenses**

Mr. Roberts also moves for the reimbursement of expenses incurred in the prosecution of this action by his pro bono counsel, Haeggquist & Eck, LLP. His counsel requests reimbursement for $22,271.81 of the $29,049.85 in expenses they incurred.

This Court may reimburse out-of-pocket expenses necessarily incurred by court-appointed attorneys representing indigents in pro bono cases. L.R. 83.8(2)(a).

The Court finds that Mr. Roberts' counsel should be reimbursed $2,737.86 for transcripts and $204.95 for charts and exhibits. These costs were both necessary and reasonable. The requested $19,329 for the services of Mr. Roberts' retained dental expert, however, goes above and beyond what is necessary. In all, Mr. Roberts' counsel seeks reimbursement for 30.4 hours of expert work before trial at an hourly rate of $475 and an additional $4,600 for the witness to appear at trial. The Court finds that these figures represent an unreasonably high fee for services. Instead, the Court will apply the lodestar method—similar to the approach used by federal courts in assessing attorney's fees—to determine the reasonable amount of expert fees. *See Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (detailing the use of the lodestar method to calculate attorney's fees). The Court accepts as reasonable the expert's claimed 38.4 hours of work. This includes 30.4 hours before trial and 8 hours for her appearance at trial.[1] The Court finds that an hourly rate of $250 is appropriate. After adding an additional $269 for clerical costs, the appropriate total compensation for the work of Mr. Roberts' expert witness is $9,869.

Mr. Roberts' Motion for Reimbursement of Expenses is **GRANTED IN PART** and **DENIED IN PART**. Mr. Roberts' counsel is entitled to reimbursement from the Court Pro Bono Fund in the amount of **$12,811.21** ($9,869 for witness fees, $2,737.86 for transcripts, and $204.95 for charts and exhibits).

/ / /

/ / /

/ / /

/ / /

---

[1] Mr. Roberts' expert does not specify the number of hours spent at trial, but instead billed a flat fee of $4,600 for her work. The Court finds that 8 hours is a reasonable estimate of her trial-related hours.

- 4 -

## CONCLUSION

For the reasons above, Mr. Roberts' Motion to Re-Tax Costs is **GRANTED**, Dkt 143, and Mr. Roberts' Motion for Reimbursement of Expenses is **GRANTED IN PART** and **DENIED IN PART**. Dkt. 140.

**IT IS SO ORDERED**.

Dated: June 25, 2019

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge